THE STATE v. COOPER, *Appellant.*

DIVISION TWO.

1. .Criminal Law : BIGAMY : PROOF OF MARRIAGE. The fact of a
previous marriage must be proved in a prosecution for bigamy.

2. ——— : ——— : ———. Such marriage need not be established
by direct evidence ; but it may be inferred from circumstances.

3. ——— : ——— : ———. Cohabitation and the holding of each
other out publicly as husband and wife as well as the admissions of
the parties are admissible to prove the marriage.

4. ——— : ——— : PRESUMPTION. It is not competent, however, for
the court to instruct the jury that the law presumes a marriage
from such facts ; or that the proof of such facts shifts the burden
of proof of non-marriage to defendant.

5. Common-Law Marriage. A marriage at common law required
·no particular form or ceremony to make it valid, but enough had
to be said and done by the parties to make it a contract.

6. Marriage, Definition of. Marriage is the civil *status* of one
man and one woman capable of contracting united by contract
and mutual consent for life for the discharge to each other and to
the community of the duties legally incumbent on those whose
association is founded on the distinction of sex.

7. ——— : BIGAMY : COMMON-LAW MARRIAGE : INSTRUCTION. It is
error in a prosecution for bigamy, where the question was whether
the defendant had previously contracted a common-law marriage,
for the court to instruct the jury that if the defendant and the
woman were " in fact married " to find the defendant guilty with-
out defining what constitutes such marriage.

*Appeal from Buchanan Circuit Court.*—HON. SILAS
WOODSON, Judge.

REVERSED. AND REMANDED.

*M. G. Moran* and *James Moran* for appellant.

On an indictment for bigamy; the first marriage will
not be inferred or presumed from matrimonial cohabi-
tation, with the reputation of being married persons,

The State v. Cooper.

coupled with the admissions of the defendant during such cohabitation that they were married. While such proof is sufficient in a civil case where only one. presumption can arise, the rule is necessarily different in the case of bigamy, where the presumption of innocence arising from the. second marriage nullifies and overthrows the presumption of the first marriage obtained by such cohabitation, reputation and admissions. *Morris v. Miller,* 4 Bur. 2057; *Regina v. Flaherty,* 2 Car. & Ker. 782; *State v. Hodgkins,* 19 Main. 155; *State v. Littlejohn,* 9 Mass. 163; *Breakley v. Breakley,* 2 U. C. Q. C. 349, 358; *People v. Humphrey,* 7 John. 314; *Fenton v. Reed,* 4 John. 52; *Waddingham v. Waddingham,* 21 Mo. App. 609, and cited cases; *Barley v. O'Bannon,* 28 Mo. App. 44; *Jayne v. Price,* 5 Taunt. 326; *Case v. Case,* 17 Call. 598; *Klein v. Landman,* 29 Mo. 359; *Jones v. Jones,* 45 Md. 144; *Chamberlain v. Chamberlain,* 71 N. Y. 423; *Gahagan v. People,* 1 Parker C. R. 378.

*John M. Wood,* Attorney General, for the State.

( 1 ) The first instruction was correct. R. S. 1879, sec. 3790. ( 2 ) The third and fifth instructions given as asked by the state, and instruction, numbered 2, given by the court on its own motion, properly declared the law as to what was necessary to constitute a marriage, and are fully supported by the cases of *Dyer v. Brannock,* 66 Mo. 391, and *Cargile v. Wood,* 63 Mo. 501; *State v. Gonce,* 79 Mo. 600. ( 3 ) An instruction similar to instruction, numbered 4, in this case, was approved in the case of *State v. Brooks,* 99 Mo. 137.

THOMAS, J.—The defendant was tried for and convicted of bigamy in the criminal court of Buchanan county and was sentenced to imprisonment in the penitentiary for four years and six months, and the case is here on his appeal.

The testimony shows that in the early part of April, 1887, defendant told a friend of his that he intended marrying Lavina Atkins, who was at the time a widow ; that shortly after that, in the latter part of the same month, he represented that they had married, and they commenced living and cohabiting together as man and wife, and he introduced her and held her out to the public, and in every respect treated her, as his wife, until a few days before his marriage with Eva Alexander. In the latter part of April, 1887, he went with Lavina Cooper (formerly Atkins) to Rochester, in Andrew county, on a visit to her father, and there stated that they had married in Kansas a short time before. He represented to Nelson Graves, Lavina Cooper's father, that they had had some trouble marrying, that they had to go to Kansas to get their license, that he was under age, and their parents would not let them get married here, and he had to make two trips to Kansas—one to get the license and another to get married. After that he held her out to his and her relatives, and to the public generally, as his wife ; and they lived together as man and wife at various places in St. Joseph. During the time he had some transactions in regard to the transfer of some real estate, which they executed as man and wife. Their conduct and relations towards each other during the entire time, covering a period of over two years and a half, was that of man and wife. On November 26, 1889, he was married in Buchanan county to Eva Alexander. Shortly after this he was arrested on the charge of bigamy.

The court, at the instance of the state and on its own motion, instructed the jury as follows : " The court, on motion of the state, instructs the jury that if they believe from the evidence in this case that the defendant, on or about the twentieth day of November, 1889, at Buchanan county, wilfully married one Eva Alexander, as charged in the indictment, and he had another living wife at the time, to-wit, Lavina C. Cooper,

then the jury will find the defendant guilty of bigamy as charged in the indictment, and assess his punishment therefor at imprisonment in the penitentiary for a time not less than two nor more than five years, or in the county jail not less than six months or by fine not less than $500, or both a fine not less than $100 and imprisonment in the county jail not less than three months."

"3. The court instructs the jury that if they believe from the evidence that the defendant and Lavina C. Cooper, *alias* Lavina C. Atkins, for any long period of time lived together publicly as husband and wife; that he passed himself for her husband and she for his wife, introduced himself and herself to his family and his friends and the public as her husband and she as his wife, cohabited with her as his wife and he as her husband, and held himself and herself out to the public generally as sustaining the relations of husband and wife by his general acts and conduct, then the jury are instructed that the law presumes that they were married within the meaning of the law and that they are husband and wife, and this presumption is conclusive upon the defendant, unless he shall satisfy the jury by evidence in the case to their reasonable satisfaction that he was not married to Lavina C. Cooper, his reputed first wife, and that unless he shall so satisfy the jury they will convict him as charged."

"5. The court instructs the jury, it is immaterial in arriving at the guilt or innocence of the defendant in this case, whether he actually knew it was not necessary to constitute a binding marriage to have said marriage solemnized by a minister of the gospel or a justice of the peace, or some other officer authorized by law to solemnize a marriage."

Given by the court on its own motion: "2. The court instructs the jury that in law marriage is a civil contract; and that it is not necessary to its validity that it should be solemnized by a minister of the gospel, a judge of a court of record, or by anyone else authorized

by law to solemnize marriages. And if they believe from the evidence in this case, that the defendant and Lavina C. Cooper were in fact married to each other, on or about the eighteenth day of April, 1887, and that afterwards, to-wit, about the twentieth of November, 1889, and whilst said marital relations existed between said parties first named, he, the said defendant, was married to Eva Alexander, in Buchanan county, Missouri, they will find defendant guilty and assess his punishment as stated in instruction, numbered 1, given on the part of the state."

Defendant saved his exceptions to the giving of these instructions, and, in substance, asked the court to instruct the jury: *First.* That his marriage with Eva M. Alexander in November, 1889, overcame the presumption of his marriage with L. C. Atkins, and, *second,* that no inference of marriage with L. C. Atkins, arising from cohabitation, etc., can be drawn, but an actual marriage must be shown to convict him of bigamy. The court refused to so instruct, and defendant duly excepted, and urges here that the court erred in the instructions given as well as refusing those he asked, and also in not giving an instruction defining what marriage is.

I. We are clearly of the opinion that instruction, numbered 3, given at the instance of the state, did not declare the law properly. The fact of the marriage of defendant and L. C. Atkins must be proved before he can be punished for bigamy. This marriage is at least a part of the *corpus delicti*, without proof of which no conviction can be had. The fact that a man and woman live together for a long time publicly, pass and introduce each other and cohabit as husband and wife and say they are married, is *evidence* tending to prove a marriage, and may even raise a presumption that the parties were in fact married, but this presumption is one of fact and not of law. It is the province of the

jury and not the court to determine what *probative force* these facts have in a given case. No doubt the trial court gave instruction, numbered 3, *supra*, upon the authority of *Cargile v. Wood*, 63 Mo. 501, and *Dyer v. Brannock*, 66 Mo. 391; but these cases involved legitimacy, and there is a marked distinction between suits in which legitimacy of children or the sanctity of the domestic relation is at issue and those in which the effort is to impose upon defendant penalties attachable to an illegal marriage. In the first case we have in favor of the marriage the presumption of legitimacy as well as that of good faith. In the second place, we have against the marriage the presumption of innocence. We cannot, therefore, transfer the decision in the last class of cases to the former. 1 Whart. Crim. Ev., sec. 85.

Mr. Bishop says: "It is commonly said that in this issue of polygamy, a *fact* of marriage in distincton from the sort of presumptive one which suffices in *civil* cases must be shown. But an examination of the question discloses the principle to be that while commonly in civil causes the proof of marriage is based on the presumption of morality and obedience to law, whereby, if parties are or have been cohabiting as husband and wife, they are deemed to be honestly and innocently so, therefore married; whereas, when this presumption is attempted to be invoked in a *polygamy* case, it comes into conflict with the like presumption as to the second marriage and living together; and so, as presumption nullifies presumption, other proof is required." 1 Bish., sec. 60, and cases cited; *Com. v. Jackson*, 11 Bush, 679.

The fact of marriage must be proved in a criminal case. It need not, however, be proved by direct evidence, but may be established like any other fact by circumstantial evidence. Cohabitation and the holding of each other out publicly as husband and wife, as well as the admissions of the parties, are facts possessing

evidential force and are admissible in evidence to prove a marriage. In a case like this, however, where the defendant is presumed to be innocent of the crime of bigamy, the court has no right to tell the jury how much evidence it takes to change the burden of proof from the state to the defendant. Indeed, the burden of proof is not shifted at all, but the presumption of the innocence of the accused continues with him till his guilt is established beyond a reasonable doubt. For this error the instruction under review was not the law in this case.

II. The court ought to have defined what a legal marriage is, and erred in not doing it. In instruction, numbered 3, *supra*, the jury is informed that, from a given group of facts, the law presumes that the defendant and L. C. Atkins were married within the meaning of the law, and this presumption became conclusive upon the defendant unless he satisfied the jury, by evidence in the case to their reasonable satisfaction, that he was not married to her. Then, by instruction, numbered 2, given by the court on its own motion, the jury is instructed "that, in law, marriage is a civil contract; that it is not necessary to its validity that it should be solemnized by a minister of the gospel, a judge of a court of record, or by anyone else authorized by law to solemnize marriages." It is then added that, if they believe, from the evidence, that "defendant and Lavina C. Atkins were *in fact married* to each other," and, while this relation existed, he married Eva Alexander, then they must convict him. It is exceedingly doubtful what was meant by the former instruction. Was it intended to inform the jury that the facts set out in the instruction *constituted a marriage*, or that these were simply evidence from which the law presumed a marriage?

In instruction, numbered 2, the court tells the jury what is not necessary to the validity of a marriage, but

fails to inform them what is necessary. The court instructed the jury that the state was not bound to prove a ceremonial marriage in conformity to' the statute, between defendant and Lavina C. Atkins, in order to convict. In this the court committed no error. We have held in *State v. Bittick, ante,* p. 273, that a common-law marriage is valid in Missouri, notwithstanding our statute in regard to this subject. But after telling the jury this, and that if defendant and this woman were "in fact married," the court left them to guess as to what a marriage in fact is. The court, no doubt, intended to use the phrase, "married in fact," as synonymous with married according to the common law. We may well presume that what constitutes a marriage, according to the formalities prescribed by the statute, is within the common knowledge of mankind, but we cannot indulge this presumption as to a common-law marriage, and hence the words, "married in fact," ought to have been defined by the court in its charge to the jury.

A marriage at common law required no particular form or ceremony to make it valid, but enough had to be said and done to make it a contract. It was even more than a contract. It was a *status* created by contract, and, in the *Bittick case,* we defined it thus : "Marriage is the civil *status* of one man and one woman capable of contracting, united by contract, and mutual consent for life, for the discharge to each other and to the community of the duties legally incumbent on those whose association is founded on the distinction of sex."

To constitute a valid marriage, either under the statute or at common law, there must be, *first*, one man and one woman capable of contracting ; *second*, they must enter into a contract by which they assume the relation of husband and wife, for their joint lives,

and they must both understand that neither one, nor both, can rescind the contract or destroy the relation.

In this case, in addition to what was said as to what was not necessary to a valid marriage, the court ought to have instructed the jury that if defendant and Lavina C. Atkins entered into a mutual contract, by which they assumed to each other the relation of husband and wife, and that this relation was to continue so long as they both should live, and that they understood that neither one, nor both, could rescind that contract or destroy that relation, then, they were "married in fact," within the meaning of those words as used in the instructions.

The last marriage being proved, and even admitted, the sole issue of fact the jury was called upon to determine in the case, was not whether defendant had a *concubine*, but whether he had a *wife*, living at the time he married Eva Alexander. If he did have a *wife* living at that time, he committed bigamy in marrying again. If Lavina C. Atkins was not his wife, as above defined, then he had a legal right to marry Eva Alexander. If she was not his wife, in a legal sense, he may have been guilty of "open gross lewdness and lascivious behavior," under section 3798, Revised Statutes, 1889 ( *State v. Osborne*, 69 Mo. 143, and cases there cited ); but could not be convicted of the crime of bigamy.

Judgment reversed and cause remanded.