The State v. Ulrich.

---

·THE STATE v. ULRICH, *Appellant*

Division Two, May 31, 1892.

1.  **Evidence**: JUDICIAL NOTICE.  Courts take judicial cognizance of their own orders in the same case.

.2.  **Criminal Law**: CONSTITUTION: TWICE IN JEOPARDY.  Where the jury in a criminal case is discharged because of the sickness of the judge, the defendant will not be regarded as having been in jeopardy.

3.  ———: BIGAMY: EVIDENCE.  On a trial for bigamy, the person whom the indictment charges to be the defendant's lawful wife is incompetent, without defendant's consent, to testify against him.

4.  ———: ———: ———.  In such case letters written by defendant to such wife are inadmissible.

5.  **Criminal Practice**: IMPROPER REMARKS OF PROSECUTING ATTORNEY.  It is reversible error for the prosecuting attorney in his argument to the jury to repeat a statement made by a judge of another court as to his being convinced of defendant's guilt , or to call the defendant "a sugar-loaved, squirrel-headed Dutchman."

·6.  ———: BIGAMY: PROOF OF MARRIAGE.  In a prosecution for bigamy, marriage may be established by witnesses who were present, the admissions of defendant, cohabitation and treating the woman as his wife.

*Appeal from  Jackson  Circuit  Court.*—HON. HENRY P. WHITE, Judge.

REVERSED AND REMANDED.

The State v. Ulrich.

*E. H. Stiles* and *R. F. Gilkeson* for appellant.

(1)   The court erred in overruling defendant's plea in bar and motion for discharge on the ground that he had been once in jeopardy.   See opinion of Judge PHILIPS, 42 Fed. Rep. 587, granting writ of *habeas corpus* to defendant from the United States court at Kansas City, on the ground that his restraint was in violation of the fourteenth amendment of the federal constitution, that no state shall deprive any person of life, liberty or property without due process of law. (2)   The alleged wife was incompetent as a witness against defendant.  1 Greenleaf on Evidence, secs. 339, 340, 342; Wharton's Criminal Evidence, sec. 394; *State v. Berlin*, 42 Mo. 572; *State v. Gardner*, 1 Root (Conn.) 485.   (3)   The court erred in denying a new trial on the ground of the misconduct of the prosecuting attorney.   (4)   The court committed error in refusing and giving instructions.

*John M. Wood*, Attorney General, for the State.

(1)   The defendant was not in jeopardy.   The necessity which caused the discharge of the jury was something that could not be foreseen at the commencement of the trial, and the jeopardy which was supposed to have attached by impaneling of the jury and taking part of the testimony was by reason thereof shown to have never existed in fact or in contemplation of law. 1 Bishop on Criminal Law, sec. 1032; *Hector v. State*, 2 Mo. 167; *State v. Huting*, 21 Mo. 464; *State v. Jeffors*, 64 Mo. 376; *State v. Tatman*, 59 Iowa 471; *Commonwealth v. McCormick*, 130 Mass. 61; *Dales v. State*, 97 Ind. 555; *Mixon v. State*, 59 Ala. 129; *State v. Emery*, 59 Vt. 88; *Windsor v. Queen*, L. R. 1 Q. B. 289. (2)   The authority to discharge a jury from giving a verdict under the circumstances above indicated, or

under any other circumstances where "there is a man-ifest necessity for the act, or the ends of public justice would otherwise be defeated," is a matter resting within the sound discretion of the trial court. In the exercise of that discretion the trial court must determine the existence of the necessity for discharging a jury, and, if the act is done, it is to be presumed that the necessity existed, and no other court can revise its decision. *United States v. Morris*, 1 Curtis, 23; *Moseley v. State*, 33 Tex. 671; *Commonwealth v. Purchase*, 2 Pick. 521; *State v. Tatman*, 59 Iowa, 475; *State v. Copeland*, 65 Mo. 597. (3) No evidence was offered in support of the plea in bar. The record of the proceedings in the cause should have been introduced to show whether in fact the defendant had been in jeopardy, and, if so, that it "was not discharged by operation of the law, or waived by some act of the defendant." The plea does not prove itself. In pleading jeopardy, the burden is upon the defendant to show all the facts which are necessary to entitle him to the benefit of such a plea. *Hensley v. State*, 107 Ind. 587; *Commonwealth v. Daley*, 4 Gray, 209; *Cooper v. State*, 47 Ind. 61; *State v. Huting*, 21 Mo. 471; *State v. Daniel*, 94 Mo. 301. (4) Frederica Ulrich, defendant's first and lawful wife, was a competent witness under the statute, if she desired to testify. R. S. 1889, sec. 4218; *State v. Newberry*, 43 Mo. 429; *State v. Sloan*, 55 Iowa, 217. (5) Admissions of defendant are competent to show both the first and second marriages. The evidence of Frederica Ulrich, that she first discovered that defendant was married a second time from his admissions made before Judge GIBSON in a divorce proceeding instituted by him against her, was competent. *Tucker v. People*, 122 Ill. 583; *State v. Hughes*, 35 Kan. 626. (6) The remarks of the prosecuting attorney did not constitute reversible error. *State v. Stark*, 72

Mo. 37; *State v. Zumbunson*, 86 Mo. 111; *State v. Emery*, 79 Mo. 461; *State v. Walker*, 98 Mo. 95; *State v. Brooks*, 92 Mo. 542; *State v. Elvins*, 101 Mo. 243; *State v. McNamara*, 100 Mo. 100; *State v. Young*, 105 Mo. 634.

GANTT, P. J.—The defendant was indicted in the criminal court of Jackson county, at the January term, 1890, for bigamy. He was brought to trial on April 21, 1890. After the jury was impaneled, the cause progressed until noon on the twenty-second day of April.

The record herein then recites the following proceedings: "The judge announced that Judge JAMES M. SANDUSKY would be present in the afternoon of that day in obedience to a request, that he, Judge SANDUSKY, should preside in the trial of the cause of the State *v.* Wheeler, and that no further proceedings would be had in this cause until the case of state against Wheeler was disposed of upon its then setting. The jury was cautioned and dismissed until the Wheeler case should be finished, an explanation being added at the time that possibly the Wheeler case would occupy more time than was then contemplated. If so, the jury were warned that they were to be governed by the caution then given, although it should not be repeated to them. The trial of the Wheeler case was not concluded until April 25, 1890, late in the afternoon. During the continuation of the Wheeler trial the jury were from time to time notified by the judge that they were excused until some specific time in the future. Finally, at the conclusion of the Wheeler trial, and on April 26, 1890, the judge of this court being ill announced that he was not able to preside in court, and the jury was discharged, and the cause set for trial on the twenty-sixth of May, 1890.

Upon this last order being made, the court was, on account of the illness of the judge, adjourned until May 5, 1890. From the impaneling of the jury in this cause until after its discharge on April 26, above mentioned, the defendant was in custody, it being held by the judge that, during the trial of a cause from the impaneling of the jury to the conclusion of the trial, a defendant is not entitled to go at large upon his recognizance, although a continuing one, and in usual statutory form, with approved sureties. During all the time occupied with the trial of the Wheeler case, and when the same was called for trial, the defendant Ulrich was not in court, and was in confinement, and the jury in his cause was not polled or called, nor did the jury at any time receive any caution further than is herein heretofore stated. At the time of the discharge of the jury on April 26, 1890, the defendant Ulrich and the jury in his cause were present in court, and objection was, at the time, made by defendant to the action of the court in discharging the jury and putting the cause down for trial on the twenty-sixth of May, 1890, and exception to the action of the court duly saved.''

On the morning of the said twenty-sixth day of May, 1890, to which defendant's case had been adjourned, and when his said case was called for trial, he then and there filed his motion for discharge and plea in abatement, on the ground that having once been placed in jeopardy by the former proceeding he could not then again lawfully be placed on trial, which said motion and plea set forth the foregoing facts, and was verified by defendant's affidavit and that of his counsel. No other evidence was offered by defendant.

This plea in abatement was overruled by the court, and this is assigned as error, both in the motion for new trial and in arrest of judgment.

The attorney general makes the preliminary objection, that the defendant offered no evidence of the facts alleged in his plea or motion for discharge. It was not necessary to do so in this case. Every fact alleged in the motion was entered of record or was within the knowledge of the judge of the court, and the motion was directed at his conduct. Courts take judicial cognizance of their own orders in the same cause. *State v. Jackson*, 106 Mo. 174, and cases cited.

II. Assuming, then, the truth of every fact stated in the plea in abatement, was the defendant entitled to his discharge by the constitution of this state? Section 23 of the bill of rights provides: "Nor shall any person, after being once acquitted by a jury, be again, for the same offense, put in jeopardy of life or liberty; but if the jury, to which the question of his guilt or innocence is submitted, fails to render a verdict the court before which the trial is had may, in its discretion, discharge the jury and commit or bail the prisoner for trial at the next term of court, or, if the state of business will permit, at the same term; and if judgment be arrested after a verdict of guilty on a defective indictment, or if judgment on a verdict of guilty be reversed for error in law, nothing herein contained shall prevent a new trial of the prisoner on a proper indictment, or according to correct principles of law."

It is deemed wholly unnecessary to inquire again into the history of this provision, or determine whether this guarantee against a second trial for the same offense has its origin in the constitution or in natural law, independent of the bill of rights. It is sufficient to say that it is not denied nor controverted by any intelligent person in this age of the world.

The fifth amendment to the constitution of the United States secured this right in a shorter statement

of the principle: "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

"A person is in legal jeopardy when he is put upon trial, before a court of competent jurisdiction, upon indictment or information, which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance. * * * And a jury is said to be thus charged when they have been impaneled and sworn." Cooley's Constitutional Limitations [6 Ed.] p. 399.

As to this statement of this constitutional right, by Judge COOLEY, we think there is absolutely no difference of opinion in the courts of this country or at the bar. But he continues: "If, however, the court had no jurisdiction of the cause, or if the indictment was so far defective that no valid judgment could be rendered upon it, or if by any overruling necessity the jury are discharged without a verdict, which might happen from the sickness or death of the judge holding the court or of a juror, or the inability of the jury to agree upon a verdict after reasonable time for deliberation and effort, or if the term of court as fixed by law comes to an end before the trial is finished, or the jury are discharged with the consent of the defendant, express or implied, or, if after verdict against the accused, it has been set aside on his motion for a new trial, or on a writ of error, or the judgment thereon has been arrested; in any of these cases, the accused may again be put upon trial upon the same facts before charged against him, and the proceedings had will constitute no protection." Cooley's Constitutional Limitations, 399, 400. So that, while the rule is clear, these exceptions, so palpably just and reasonable in themselves, are equally well established. They accord with common sense and right, and are firmly established in

the most enlightened judicial precedents of this country.

When the constitution of 1875 was framed, the intention of its makers was clear to avoid all further cavil as to those cases in which this provision was ordinarily invoked, by inserting in the constitution itself that a failure of the jury to agree, the arrest of the judgment on a defective indictment or the reversal of the cause on a writ of error, should not prevent a new trial.

Mr. Bishop, in his work on criminal law, volume 1, section 1032, states the doctrine as follows: "Sickness may come unknown till it arrives. And if while the cause is on trial it falls on the judge or a juror, or the prisoner, to interrupt the proceeding before verdict, this result shows that no jeopardy existed in fact, though believed to exist, and the prisoner may be required to answer anew."

The record entry in this cause is as follows: "Now comes the prosecuting attorney, comes also the defendant, Oscar Ulrich, in person and by attorney, come also the jury herein, and the judge of this court being too ill to proceed with the trial of this cause orders that the jury herein be discharged, and that the trial of this cause be set for May 26, 1890, and made a special order for that day."

Here there was a judicial finding by a court of competent jurisdiction, that the judge of the court was too ill to proceed and finish the trial, and for this reason the jury was discharged, and the cause continued.

In *Commonwealth v. McCormick*, 130 Mass. 61, the court says: "From the necessity of the case, however, there must be many objections to the rule. Thus it is held not to apply when the trial comes to an end by the sickness or death of a juryman (*Rex v. Edwards,*

4 Taunton, 309; *United States v. Haskell*, 4 Wash. (C. C.) 402), or the illness of the judge (*Nugent v. State*, 4 Stewart & Porter, 72), or the expiration of the court (*Newton's Case*, 132 B. 716; 3 Cox (C. C.) 489), or the impossibility of obtaining an agreement of the jury within a reasonable time or without physical coercion (*United States v. Perez*, 9 Wheat. 579), * * * or, in short, whenever the case cannot be proceeded with by reason of some physical or moral necessity arising from no fault or neglect of the government. When such is the case, the trial may be stopped and the defendant will not be protected from being afterward tried upon the same indictment." To the same effect is *Doles v. State*, 97 Ind. 555, where a juror was taken sick after the jury was impaneled and sworn, and *Mixon v. State*, 55 Ala. 129, where the judge excused a juror for sickness, and, though authorized by law to fill up the jury with another juror and finish the trial, declined to do so because he was fatigued and unwell, the court held the prisoner was not entitled to his discharge. *State v. Emery*, 59 Vt. 88; *State v. Huting*, 21 Mo. 464; *Hector v. State*, 2 Mo. 167.

Indeed, that sickness of a judge is considered an overruling necessity does not seem to be seriously questioned, but it is earnestly contended here, that the judge was not seriously ill; that the record discloses he adjourned court from April 26 to May 5, and that had he not permitted the trial of State *v.* Wheeler by Judge SANDUSKY to intervene he would not have been sick before this cause could have been concluded, and, therefore, his sickness was not the proximate cause of this mistrial. And much stress is laid upon the fact, that the defendant was not brought into court each day, and the jury called and each time cautioned not to permit anyone to talk to them about the case.

The question at once arises, conceding that sickness of the judge is a good cause for discharging a jury, who is to determine this? The judge himself or some by-stander, or the attorneys for the defendant, or some other court, having no jurisdiction in the case, or this court upon appeal. It seems to us, the question at once suggests its proper answer. From the necessity of the case, the trial judge must determine this himself. In *United States v. Morris*, 1 Curtis (C. C.) 23, at page 36, Judge CURTIS, then associate justice of the supreme court of the United States, quoted with approval the rule laid down in *United States v. Perez*, 9 Wheat. 579, as follows: "We think that, in all cases of this nature, the law has invested courts of justice with authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, *or the ends of public justice would otherwise be defeated*. They are to exercise a sound discretion on the subject, and it is impossible to define all the circumstances which would render it proper to interfere;" and further said: "If there is no necessity, strictly speaking, yet if, in 'the opinion of the court, taking all the circumstances into consideration, the ends of public justice would otherwise be defeated, then even a capital case may be taken from a jury, and *a fortiori* may be a case of misdemeanor. * * * The finding of a cause for withdrawing a juror, or taking a case from a jury, is a judicial act; the authority to do it is intrusted by law to that court, and no other court can revise its decision. * * * Where a judicial act is to be done upon proof, laid before the tribunal, and the act is done, it is to be presumed that the necessary facts were proved, and no other tribunal is at liberty to re-examine the question."

In *Moseley v. State*, 33 Tex. 671, the court in discussing this question says: "But it is believed that there is no decision by any court of respectable authority, that has gone to the extent of denying to the court or judge a discretionary power to discharge a jury when there is a physical or moral necessity, and it must be left to the court to decide when that necessity exists; and Chancellor KENT, in discussing this question, says (*People v. Olcott*, 2 Johnson's Cases, 308): 'That when cases of necessity are admitted to form exceptions, that moment a door is opened to the discretion of the court.' * * * We are of opinion that the best interests of society may be more fully maintained and subserved by permitting the courts to exercise a sound and careful discretion in holding or discharging a jury, whenever a necessity should arise or the public good require. * * * That a court may exercise a sound and careful discretion in discharging a jury, Chancellor KENT says, 'has been settled by overwhelming precedents and authority.' 2 Kent's Commentaries, 13; see, also, 18 Johnson, 204. But we think the case of *United States v. Perez* (9 Wheat. 579), decided by the supreme court of the United States, has authoritatively settled this question as far as the constitution of the United States and this state is concerned. Judge STORY, in delivering the opinion of the court, says: 'We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving a verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would be defeated.'"

In *Commonwealth v. Purchase*, 2 Pick. 521, on page 524, the court says: "In looking through English cases upon the subject, we are satisfied in

adopting the opinion that by the English common law, in all cases of felony, where a jury has been charged with a cause and any unforeseen necessity occurs, the cause may be taken from them, and a new jury charged with the trial. The existence of this necessity must be determined by the court, *on the high responsibility they are under to the public.* * * * The principle being admitted that necessity is to control the operation of the rule, it follows, of course, that the court must judge when the case has happened which will justify them in discharging the jury. Many cases may be suggested equally strong with those which have been judicially acted upon, for which there would be no relief, if the rule admits of no exceptions, or if the courts are limited in their discretionary authority to those exceptions which have already been established."

In the case of *State v. Tatman*, 59 Iowa, on page 474, that court said: "Of course it must not be understood that the rule requires that an actual necessity should exist for the discharge of the jury. If that were to be the test, then, in case of the sickness of the judge or a jury, *the defendant might object that the sickness was so slight as not to absolutely require that the trial be stopped. Something must be left to the discretion of the court. If the discretion be not abused the defendant has no cause of complaint.*"

This court, in discussing this question in the case of *State v. Copeland*, 65 Mo. 497, says: "But we are asked on the meager record recitals to which we have adverted, to assume that the defendant was put 'in jeopardy' within the meaning of the constitution, by reason of the discharge of the jury not appearing to have been with the consent of prisoner, and by reason of such discharge occurring without the existence of other circumstances to which the plea makes reference. This is an assumption we are not prepared to make. On

the contrary, we must take for granted, in the absence of aught of record in opposition thereto, that the discretion which the constitution manifestly confers was not unsoundly exercised. If this be true, then it can but follow that the defendant has not been put 'in jeopardy,' and that his plea should not have been successful. In the case of *State v. Jeffors*, 64 Mo. 376, the record did not show any discharge of the jury, and it was claimed that the prisoner was entitled to his discharge on the ground that he had once been put in jeopardy. But it was there held, after no little examination of authorities, that the motion for the discharge of prisoner was properly overruled.''

Was there such an abuse of discretion in this case, that this court on this record should discharge the defendant? We think not. It appears from the record proper and bill of exceptions that Judge WHITE, the judge of the criminal court, had under the authority of our statutes invited Judge SANDUSKY of the Clay circuit court to try the cause of State *v.* Wheeler, then pending in said court. At the noon hour of April 22, Judge WHITE announced to the counsel in this cause that Judge SANDUSKY would be present in the afternoon to try the Wheeler case, and this cause would be continued until that cause was heard. And thereupon the record shows that, with the consent of defendant, the jury were duly cautioned and permitted to separate until the Wheeler case was finished. No objection whatever was made to this at the time. Now let us concede that defendant had the right to have his cause finished before another cause was entered upon, still this inconvenience or delay falls far short of entitling defendant to an absolute discharge for this reason. If he was not willing for the jury to separate or for the cause to stand over, then was his time to object and except. The conduct of Judge

WHITE in continuing the case was evidently for the purpose of enabling the judge of the other circuit, who had come to accommodate. him and counsel in the Wheeler case, to try the cause and return to his duties in his own circuit.

That Judge WHITE could not foresee the length of the trial in the Wheeler case, nor anticipate he would be too sick to finish this case, does not, in our opinion, show any evidence of an intention to trifle with the rights of this defendant. The trial judge is charged with the disposition of all the causes on his docket. It often taxes his strength to dispose of them within the terms prescribed by law. Much must be left to his discretion and judgment as to the manner in which he hears the different causes, and the abuse ought to be flagrant to justify any other court in interfering therewith.

As to the suggestion that the judge remained an hour in the court, and then adjourned till May 5, we take it this is made for the purpose of showing he was not in fact sick. We need only say, there is not a word of evidence that he was not too ill to hold court, either on the twenty-sixth or fifth of May; there is no evidence that he held court until May 26. We mention this merely because we do not see in this record cause for the severe animadversions of counsel on his course, not as a reason for sustaining his ruling. When the law cast upon him the solemn duty of presiding and administering justice in that court, *"ex necessitate"* it vested him with a discretion to continue this cause for good and sufficient reasons. He makes his record say he did so, because he was too ill to finish the trial. According to him that credit and courtesy due to a public officer "of high responsibility to the public," we have no right in the absence of clear countervailing evidence to question either the verity or good

faith 'of that statement. For the learned judge of the federal court within and for the western district of this state, who reached a different conclusion, we have the most profound respect. He has brought to the discussion of this case, as it appeared to him, his great learning and unquestionable ability. Some of the facts upon which he founds his argument and bases his conclusions do not appear in this record. We have not been able to take his view of the case.

III. Upon the second trial the state offered Frederica Ulrich as a witness. The indictment charges that said Frederica had been and then was the lawful living wife of the defendant. The defendant then and there objected, that she was not competent, for the reason, that, if, as the state charged, she was his lawful wife, she was incompetent, and, if she was not his wife, then he was not guilty of the charge, as she alone was charged to be his lawful wife. The court overruled the objection, and permitted her to testify. In this the court erred. This was the common law, and no provision of our statute has changed it. The rule was based upon the soundest considerations of public policy growing out of the marital relation. *State v. Berlin*, 42 Mo. 572; *Stein v. Bowman*, 13 Peters (U. S.) 223; *State v. Turner*, 50 Miss. 351; *State v. Turpin*, 55 Mo. 477; *Gibson v. Com.*, 87 Pa. St. 253; 9 American & English Encyclopedia of Law, 806; *State v. Moore*, 61 Mo. 276; 1 Greenleaf on Evidence, secs. 339, 340, 342; 3 Greenleaf on Evidence, secs. 204, 206; Wharton on Criminal Evidence, sec. 390.

IV. Not only was the first wife incompetent, but the *letters produced by her and in her custody*, purporting to have been written by defendant to her, were also inadmissible. It is believed that no case can be found where the letters of husband or wife have been admitted against the other unless brought into court by a third

party. *State v. Buffington*, 20 Kan. 599; *State v. Hoyt*, 47 Conn. 518; Wharton on Criminal Evidence, sec. ·398; 1 Greenleaf on Evidence, sec. 254*a*.

V.    The action of the trial court in admitting in evidence, over defendant's objection, the testimony of Frederica Ulrich, taken on her application for alimony in Judge GIBSON's division of the circuit court of Jackson county, was inadmissible under any rule of evidence. There was no excuse for proving what this witness testified to in another court.    If her evidence was competent, she was present, and the defendant had the right to meet her face to face, and have the jury weigh her testimony; but, as already said, she was not competent. Nor was her admission in her pleadings that she was married in 1872, instead of 1871, any excuse for this evidence.    Her petition and affidavit were only offered in evidence at the close of the case.    This error was flagrant.

VI.    The statement of the prosecuting attorney in his closing speech that Judge GIBSON caused or was at the bottom of this prosecution, and a statement of remarks alleged to have been made by Judge GIBSON on the hearing for alimony, were well calculated to do the defendant great harm.    To impress upon that jury, that the judge of the circuit court was so convinced of defendant's guilt that he had ordered him into custody when there was not a particle of evidence upon which to base it, was a most serious breach of duty on the part of the prosecuting attorney.    It is strange that gentlemen who represent the state will so far forget themselves as to indulge in these statements.    The jury had no right to know what Judge GIBSON thought of defendant's conduct.    It was not an issue; but that it was most hurtful, is apparent to anyone.    Neither was it proper for the prosecuting attorney to call the defendant "a sugar-loaved, squirrel-headed Dutchman," nor

for the trial court to permit it unrebuked. We hesitate not to say such conduct is reversible error.

VII. As this case must be reversed and remanded we hold that it was not necessary for the state to prove a formal marriage, solemnized before a justice of the peace, nor produce a record or copy thereof. The indictment charged that Frederica was the lawful living wife of defendant. The state was not bound by any pleading of hers in the divorce case. While the marriage must be proven, it is not necessary to show it by direct evidence. It may be established, like any other fact, by witnesses who were present, by admissions of defendant, cohabitation and holding her out as his wife. As this question was fully considered in *State v. Cooper*, 103 Mo. 266, it is unnecessary to say more on this point.

The judgment is reversed and cause remanded. All concur.