STATE OF MISSOURI, Respondent, v. CHARLES WILLIAMS and MRS. T. S. ADAMS, Appellants.

Springfield Court of Appeals, January 18, 1919.

1. **CRIMINAL LAW: Appeal: When Perfected.** An appeal is not perfected until an appellant has filed in the appellate court a full and complete transcript, unless the appeal is based on some error appearing in the record proper; and Laws 1911 p. 139, relating to time of allowance and filing of bill of exceptions, ap plies to criminal as well as civil cases.

2. ———: **Appeal in Misdemeanor Cases: Time for Perfecting.** Defendants, convicted of lewd and lascivious cohabitation under Revised Statutes, section 4729, had, in view of Laws 1913, p. 226, six months within which to perfect appeal, a misdemeanor appeal not being returnable as a civil appeal.

3. ———: **Delay in Perfecting Appeal: Excuse.** Although appeal was not perfected within six months, as provided by Laws 1913, p. 226, *held* that State's motion to dismiss would be overruled, in view of explanation of the delay, and fact that motion to dismiss was not filed until long after appeal had been perfected.

4. **LEWDNESS: Lascivious Cohabitation: Elements of Offense.** To establish the offense of lewd and lascivious cohabitation, under Revised Statutes 1909, section 4729, it is necessary to prove that at least one of defendants was a married person during the period of cohabitation.

5. ———: ———: **Marriage: Evidence: Sufficiency.** In prosecution under Revised Statutes 1909, section 4729, against a man and a woman for lewd and lascivious cohabitation, evidence *held* sufficient to show that the woman was married and had a husband living during the period of cohabitation.

6. ———: ———: **How Proved.** In prosecution under Revised Statutes 1909, section 4729, against a man and a woman for lewd and lascivious cohabitation, marriage may be established by eyewitnesses, by the record or marriage certificate, by admission, or by cohabitation and a holding out, indicating that the marriage status exists, but mere matter of repute or testimony derived therefrom is insufficient.

7. **WITNESSES: Lascivious Cohabitation: Testimony of Defendant's Husband.** In prosecution under Revised Statutes 1909, section 4729, against a man and a woman for lewd and lascivious cohabitation, the woman's husband was incompetent to give evidence of facts against her which would tend to establish her guilt, if the evidence related to a time when the marriage relation existed.

8. ———: ———: ———: **Admissibility.** In prosecution under Revised Statutes 1909, section 4729, against a man and a woman for lewd and lascivious cohabitation, the mere fact that the woman and her husband were at the time of trial divorced would not make the husband a competent witness to testify against his former wife.

9. **CRIMINAL LAW: Admission of Incompetent Testimony: Reversible Error.** In prosecution under Revised Statutes 1909, section 4729, against a man and a woman for lewd and lascivious cohabitation, permitting the woman's husband to testify with reference to whether she was married during the period of cohabitation, *held* not reversible error, where there was other competent evidence to support the verdict.

Appeal from Reynolds County Circuit Court.—*Hon. E. M. Dearing,* Judge.

AFFIRMED.

*R. I. January, Buford & Chitwood* and *O. L. Munger* for appellants.

*John R. Johnson* and *John H. Keith* for respondent.

BRADLEY, J.—Defendants were charged by in-dictment with lewd and lascivious cohabition denounced by section 4729 Revised Statutes 1909, upon trial below before the court and a jury defendants were found guilty and their punishment fixed at a fine of $200 and six months in jail each, and from this con-viction defendants have appealed.

The State has filed a motion to dismiss the appeal on the ground that it was not perfected in time. The appeal was taken on December 1, 1917, and defendants given until March 1, 1918, to file bill of exceptions. No extension of time was given, and the bill was not filed until July 31, 1918; and transcript of the record was filed here August 5, 1918, eight months and five days after the appeal was taken.

Counsel for the State rely on State v. Chilton, 199 Mo. App. 220, 200 S. W. 745, where we said: 'It might be well to note here that section 5313, Revised Statutes 1909, which gives the defendant one year in which to perfect his appeal in a felony does not cover misdemeanor appeals, and therefore an appeal here in a criminal case is returnable as in a civil case. That is, if the appeal is taken sixty days before the next term of this court then the appeal is returnable to our next term, if taken less than sixty days before our next term, then the appeal is returnable to our second term thereafter.'' What we said in State v. Chilton, supra, was without reference to section 5313a, Laws 1913, p. 226, to which our attention was called, said section being as follows: "If any person taking an appeal from the circuit court, criminal court or court of criminal correction on a conviction for a misdemeanor, shall fail to perfect the appeal within six months from the time the appeal is granted, the prosecuting attorney may file his motion before the court in which the conviction was had, asking that the appeal may be dismissed and the order granting the appeal be set aside; where-upon the court shall make an order that the appeal be dismissed and the order granting the appeal be set

aside and for naught held, unless the defendant shall show to the satisfaction of the court good cause for not perfecting his appeal, in which case the court may over-rule the motion; and from the date of making such order dismissing the appeal, the judgment shall be and remain in force the same as if no appeal had been granted.'' Section 5313à, supra, affecting misdemeanor appeals was first enacted in 1899 (Laws 1899, p. 174, sec. 2717, R. S. 1899), but was repealed in 1909 (Laws 1909, p. 462), and reenacted in 1913 substantially in its original form. We do not find that this section affecting mis-demeanor appeals was ever construed prior to its re-peal or since its reenactment except by the Kansas City Court of Appeals in State v. Nardini, 186 S. W. (Mo. App.) 557, Section 5313, Revised Statutes 1909, affecting appeals in felony cases is as follows: ''If any person taking an appeal to the supreme court on a conviction for a felony other than those wherein the defendant shall have been sentenced to suffer death shall fail to perfect the appeal within twelve months from the time the appeal is granted, the attorney-general may file his motion before the Supreme Court asking that the appeal be dismissed, whereupon the court shall make an order that the appeal be dismissed, unless the defendant shall show to the satisfaction of the court good cause for not perfecting his appeal.'' This section is similar to section 5313a, Laws 1913, p. 226, affecting misdemeanor appeals, the only difference being the time in which a motion may be lodged to dismiss, and the court in which such motion is filed. In the ordinary felony appeal the appellant has twelve months in which to perfect his appeal, and if he fails to perfect in that time the attorney-general may cause the same to be dismissed by filing his motion in the supreme court, while in misdemeanor appeals if the appellant fails to perfect his appeal in six months the prosecuting attorney may cause dismissal by filing his motion in the trial court.

An appeal in a criminal case is not perfected until the appellant has filed in the appellate court a full

and complete transcript unless the appeal is based on some error appearing in the record proper. In State v. Short, 250 Mo. 331, 157 S. W. 306, the Supreme Court said: "An appeal in a civil case is deemed perfected when the trial court makes the order granting the appeal, the docket fee is paid and a perfect transcript of the record and proceeding in the case is filed with the clerk of the appellate court, or in lieu of such complete transcript a certified copy of the judgment and the order granting the appeal is filed in such appellate court. [Sec. 2048, R. S. 1909.] It follows that an appeal in a criminal case is not perfected until the appellant files with the clerk of the appellate court a complete transcript of the record proper, and also a certified copy of the bill of exceptions (unless the appeal is based upon some error in the record proper)." [See, also, State v. Conners, 258 Mo. 330, 167 S. W. 429; State v. Ilgenfritz et al., 263 Mo. 1. c. 615, 173 S. W. 1041.] The amendment of 1911 (Laws 1911, p. 139) relating to the time of allowance and filing of bill of exceptions is applicable to criminal as well as civil cases. [State v. Rogers, 253 Mo. 399, 161 S. W. 770; State v. Prince, 258 Mo. 315, 167 S. W. 335; State v. Moulton, 263 Mo. 137, 170 S. W. 1111; State v. Bailey, 191 Mo. App. 391, 181 S. W. 605.]

To what term of the appellate court is a misdemeanor appeal returnable? We have examined all the cases we have been able to find touching upon section 5313, Revised Statutes, 1909, affecting appeals in felony cases and we do not, find the specific point passed upon except by inference. [State v. Lovitt, 243 Mo. 510, 147 S. W. 484; State v. Pieski, 248 Mo. 715, 154 S. W. 747; State v. Leonard, 250 Mo. 406, 157 S. W. 305; State v. Short, 250 Mo. 331, 157 S. W. 306; State v. Leibtig, 253 Mo. 439, 161 S. W. 674; State v. Wade, 253 Mo. 345, 161 S. W. 680; State v. Underwood, 254 Mo. 469, 162 S. W. 184; State v. Conners, 253 Mo. 330 167 S. W. 429; State v. Rogers, 253 Mo. 399, 161 S. W. 770; State v. Nelon, 202 S. W. (Mo.) 536.]

In State v. Lovitt, supra, it is said: (Italics are ours) "It appears from the record that the appeal was granted on the 22nd day of January, 1910, and that an order was then made allowing defendant until and during the May term, 1910, to file his bill of exceptions. It is further shown that the time for filing the bill of exceptions was extended from time to time and that the bill was not filed until October 14, 1911. The transcript of the record was filed in the office of the clerk of the court on February 2, 1912. It thus appears that more than two years elapsed between the time of granting the appeal, and the time the transcript reached this court. Notwithstanding this inexcusable delay we have concluded to overrule the motion to dismiss the appeal, and for the following reasons. Section 5313, Revised Statutes 1909, authorizes this court, upon the motion of the Attorney-General, to dismiss an appeal for failure *to perfect the same within twelve months*: 'unless the defendant shall show to the satisfaction of the court good cause for not perfecting his appeal.' An examination of the record has not satisfied us that the defendant was responsible for the delay in perfecting his appeal, and as the record is now before us and was filed with the clerk of this court long before the filing of the motion to dismiss, we are not disposed to deny appellant a hearing on the merits."

In State v. Leonard, supra, (Italics are ours): "This case is before us on a motion filed by the Attorney-General to dismiss the appeal. The defendant was convicted in the circuit court of the city of St. Louis for setting up and keeping a gambling devise called a "crap game," and his punishment assessed at six months' imprisonment in the city workhouse. An appeal was allowed to this court on the 9th day of December, 1910. Defendant gave bond, and a stay was granted. The bill of exceptions was, after several extensions of time therefor, filed in the trial court June 19 1911. Nothing further was done in the matter until March 6, 1913, when defendant filed a transcript with the clerk of this court, thus perfecting the appeal. The

motion of the Attorney-General is filed under the authority of the statute (Sec. 5313, R. S. 1909) which provides that in any felony other than where the sentence is death, *the appeal shall be perfected within twelve months from the time the same was granted,* and upon failure so to do, the court upon motion shall dismiss such appeal unless the defendant shall show good cause for not having sooner perfected same.  The Attorney-General, after proper and timely notice to defendant, filed the motion to dismiss March 22, 1913, and it was passed to be heard with the cause.  At the present April term (April 10, 1913) the cause was called for hearing and was submitted on the motion to dismiss by the State, no brief having been filed or other appearance entered by the defendant.  The statute (Sec. 5313, supra) is mandatory in its terms, and the court is limited in its enforcement only upon the showing of good cause by the defendant for not having *perfected his appeal within the time prescribed.*  The statute (Sec. 5312, R. S. 1909) dispensing with assignments of error and requiring this court to proceed upon the return of an appeal or writ of error in a criminal case and to speedily hear and determine the same upon the record, has no application when the appeal is not *perfected within twelve months* from the time of the granting of same, except, of course, when a defendant shows good cause for delay beyond that time.''

The latest reference to section 5313 we find is State v. Nelon, supra.  There it is said: ''The appeal herein was granted by the circuit court of the city of St. Louis on the 28th day of June, 1916.  The bill of exceptions was filed in said circuit court on the 25th day of June, 1917.  The full certified transcript was not lodged with the clerk of this court until some day subsequent to the 30th day of June, 1917.  The docket fee was not paid, and consequently the case was not formally filed here until the 12th day of December, 1917.  Prior to this formal filing, the Attorney General moved this court to dismiss this appeal for failure

*to perfect the same within one year* after the appeal was granted.''

The only reasonable conclusion deducible from the cases involving section 5313 affecting felony appeals so far as concerns the return term is that the ''return term'' has been the term next following the time when the appeal was *perfected,* but subject to dismissal if not perfected in one year from the time of the appeal. All the cases touching appeals in felony cases clearly indicate that the appellant has a year in which to perfect his appeal. In State v. Short, supra, l. c. 334 it is said: ''Of course, if the failure to perfect his appeal within the year *granted him by law* was the fault of the circuit clerk in not preparing the transcript in a timely manner, or the fault of any person other than the defendant or his attorneys, such fact might furnish ground for overruling the motion to dismiss, but the defendant files no brief in this case and makes no showing in opposition to the motion of the Attorney-General.'' Again in discussing an appeal in a felony case the Supreme Court in State v. Pieski, supra, said: ''The appellant in order to reach this court, after leaving the court, *nisi,* must walk in the footprints of a civil appellant, *though he is allowed to travel more slowly.''*

If an appellant in a felony case has, under section 5313, twelve months to perfect his appeal we can see no reason why an appellant in a misdemeanor should not have six months to perfect his appeal under section 5313a. Twelve months' time is *granted by law.* in a felony appeal, and the same law-making body, the Legislature, has granted six months in which to perfect a misdemeanor appeal. This is clearly the holding in State v. Nardine, 186 S. W. (Mo. App.) 557, where the Kansas City Court of Appeals said: ''A motion to affirm the judgment for delay in filing in this court the transcript of appeal is not well taken. The appeal was granted in July, 1915, and the transcript was filed in December following. In 1913 the Legislature amended the law as to appeals from conviction in misdemeanor

cases, so as to give the appellant six months in which to perfect his appeal. [Laws 1913, p. 226.]

State v. Ross, 200 S. W. (Mo. App.) 730, by this court announces the same rule as to the return term of misdemeanor appeals as in State v. Chilton, supra, that is, that a misdemeanor appeal is returnable to the appellate court the same as a civil appeal. State v. Bailey, 192 Mo. App. 391, 181 S. W. 605, by this court held that the return term of a misdemeanor appeal is determined by the time of filing the bill of exceptions when filed within the extended time. In speaking of civil appeals in comparison with the appeal under consideration in State v. Bailey, supra, it is said: "This court and the other appellate courts have a rule (our Rule 16) strictly enforcing the provisions of section 2047, Revised Statutes 1909, as to the return term of appeals, and requiring a civil case to be ready for presentation at such term regardless of the time given to file bill of exceptions in the trial court. If appellant cannot file a compete transcript in time to perfect his appeal at the return term when and because the extended time for filing the bill of exceptions has not expired and none is yet filed, he must, nevertheless, present his appeal by the short method. This is the rule in all the appellate courts and the return term of an appeal cannot be prolonged by any extension of time to file bill of exceptions; and that is just as true under the amendment of 1911, supra, as before. But since, as we have seen, the appeal in a criminal case can only be perfected by filing a full transcript of the record and such must contain the bill of exceptions, of necessity the above-mentioned rule cannot apply when the time for filing the bill of exceptions has been so extended as to prevent the appeal being perfected at the return term, and of necessity the old rule that the return term of an appeal must be determined by the time of filing the bill of exceptions, when filed within the extended time, must still prevail in criminal cases." Neither of the cases, State v. Bailey, supra, State v. Ross, supra, and State v. Chilton, supra,

make any reference to section 5313a, Laws of 1913, p. 226, and we think that the holding in these cases, in so far as it is held that a misdemeanor appeal is returnable as in a civil appeal, is erroneous.

While defendant did not perfect his appeal within the six months allowed him by law by filing the full transcript in the appellate court within that time, he files here the affidavit of the official court stenographer to the effect that the transcript was ordered in due time, and that the stenographer on account of other transcripts previously ordered, and on account of actual attendance upon the court, was unable to furnish the transcript in the case at bar in time for the cause to be ready at our March term. The transcript was filed here August 5, 1918, and the cause docketed for our October term, and set for hearing October 30th. Notice of motion to dismiss was served October 14, and filed here October 17th. The statute (Laws 1913, p. 226) giving the defendant six months in which to perfect his appeal does not authorize the prosecuting attorney to file his motion to dismiss in this court, but authorizes such motion to be filed in the trial court; yet we see no reason why a similar motion may not be filed here after the transcript is lodged in this court.

In view of defendant's explanation of his delay, and the fact that no move was made to bring about a dismissal until long after appellants had perfected their appeal, although ample time had elapsed after the expiration of the six months, we overrule the State's motion to dismiss.

The indictment was returned November 15, 1915, in the Reynolds county circuit court, and charges that one Charles Williams and Mrs. T. S. Adams on or about the —— day of April, 1915, not being married to each other did then and there and from that day continuously until November 20, 1915, unlawfully, lewdly and lasciviously abide and cohabit with each other, and have sexual intercourse together; he the said Williams being then and there a married man and having a wife living, and

202 M. A.—35

she, the said Mrs. T. S. Adams, then and there being a married woman, and having a husband living.

The State offered evidence showing that defendant Williams was operating a stave mill, and that Mrs. Adams and her husband lived near the mill, the husband working some for defendant Williams, who boarded with Adams and his wife. Adams and his wife separated in 1915; just what time is not clear, and Adams went away. The defendants continued to occupy the house in which Mr. and Mrs. Adams lived prior to the separation, no other person or persons residing there. Defendants were frequently seen in company with each other, and on one occasion in particular were observed in a somewhat compromising position. There was evidence that the defendant Williams had said that he had illicit relations with Mrs. Adams, and didn't care who knew it; that Mrs. Adams said to her son-in-law that Williams said that she had the privilege of living with either of these men and that she believed Williams loved her, and she didn't know what to do about it. The record does not disclose just how long the defendants lived alone at the same house, but we gather that it was a period at least from some time in April, 1915 to November 20, 1915, as that is the period covered by the indictment and by the instructions.

The defendants at the close of the evidence offered by the State asked an instruction in the nature of a demurrer which was refused, and error is predicated upon the action of the court in failing to direct a verdict, as well as upon the admission of evidence over defendant's objection and exception. To establish the offense for which the defendants are charged it was necessary to prove that at least one of the defendants was a married person during the period of cohabitation. [Sec. 4729, R. S. 1909; State v. Coffee, 39 Mo. App. 56.] No attempt was made to prove that defendant Williams was a married man. Aside from the evidence of the husband of Mrs. Adams which we will presently notice, the evidence tending to show that Mrs. Adams was a married

woman and had a husband living during the period of the alleged cohabitation was by Amos Baker who testified that Charley Williams was staying there with Tom Adam's wife. That he knew Mrs. Adams, the wife of Tom Adams; that Tom Adams and his wife were separated. "Q. Did you know whether or not they were husband and wife—you knew Mrs. Adams, the wife of Tom Adams? A. Yes, sir." Will McDaniel testified that he married the daughter of Tom Adams and Mrs. Adams, that Tom Adams and Mrs. Adams separated about the year 1915; that Tom Adams moved to Williams' mill and lived there when he and his wife separated. That Adams and his wife were divorced in 1916. Wes. Baker testifying about a certain incident tending to show an intimate relation between defendants said: "This was two or three years ago, before Mr. and Mrs. Adams separated." After having the husband of Mrs. Adams to testify as to the marriage and separation, the State thereafter did not attempt directly to establish that Mrs. Adams was a married woman during the period of the alleged cohabitation. It appears from evidence brought out by defendants on cross examination that the defendant, Mrs. Adams and her husband were not divorced until 1916, and this with the other circumstances tending to show that Mr. and Mrs. Adams were husband and wife during the alleged cohabitation of defendants constitute substantial evidence that Mrs. Adams was a married woman and had a husband living during that period; and we reach this conclusion independent of anything testified to by the husband.

Marriage in the character of case under consideration may be established by eye witnesses, by the record or marriage certificate or by admission or by cohabitation and a holding out indicating that the marriage status exists, but mere matter of repute or testimony derived therefrom will not be sufficient. [Kelly's Criminal Law and Procedure (3 Ed.), sec. 940; State v. Coffee, 39 Mo. App. 56; State v. Clawson, 32 Mo. App. 93; State v. Ulrich, 110 Mo. 350, 19 S. W. 656.]

In State v. Cooper, 103 Mo. l. c. 271, 15 S. W. 327, a bigamy case where the same character of evidence is required to establish the former marriage as in the case at bar the court said: "The fact of marriage must be proved in a criminal case. It need not, however, be proved by direct evidence, but may be established like any other fact by circumstantial evidence. Cohabitation and the holding of each other out publicly as husband and wife, as well as the admission of the parties, are facts possessing evidential force and are admissible in evidence to prove a marriage."

In State v. Hansbrought, 181 Mo. 348, 80 S. W. 900, the Supreme Court in a bigamy case speaking of State v. Cooper, supra, said "While it was held in the case of State v. Cooper, 103 Mo. 266, that the fact of a previous marriage must be proven in a prosecution for bigamy, it was also held that such marriage need not be established by direct evidence, but may be inferred from circumstances, and that while cohabitation and the holding of each other out publicly as husband and wife, as well as the admissions of the parties, are admissible in evidence as tending to prove the marriage, yet these of themselves were not sufficient to constitute a marriage."

The State offered as a witness T. S. Adams, the husband or former husband of defendant, Mrs. Adams. As to his evidence and the objections thereto we set out the record substantially in full: "Q. Where do you live? A. I live on the head of West Fork. Q. What is your name? A. T. S. Adams. Mr. January: I object to this gentleman testifying in this case for the reason that anything he knows about this case occurred prior to this time, and at that time he was the husband of one of these defendants. The Court: Go on and we will see what he is going to testify. Mr. January: I except to the ruling of the court. Q. Where do you live? A. I live on the head of West Fork. Q. How long have you lived there? A. I have lived there and around there all my life. Q. Are you acquainted with this defendant, C. F. Williams? A. Yes, sir. Q. And with the other

defendant? A. Yes, sir, I think I am. Q. You are acquainted with her? A. She used to be my wife. Q. How long have you been acquainted with the defendant, Charles F. Williams? A. Well, it has been three or four years since he came to this country, I don't know when I first met him exactly. Q. Were you employed by him? A. Yes sir. Q. Tell the jury about it. Mr. Munger: In order to facilitate matters, I would like to ask him a few questions. at this time. There is no doubt but what this witness was living with this woman as his wife, at this time and this being a general charge and a joint charge, he could not, by any means, testify against one without testifying against the other. His testimony would be incompetent as against the defendant, Mrs. Adams, and therefore, it would not be competent in this case. Mr. Keith: Tell the jury whether or not you and Mrs. Adams, your former wife and one of the defendants in this case. ever kept the defendant, Mr. Williams, in your home? Mr. Munger: I object to that, as leading. The Court: The objection will be sustained. Mr. Munger: (Addressing witness Adams) Q. When were you married to Mrs. Adams? A. I was married to her in 1892, I think. Q. When were you divorced? I was divorced in 1915, I think. Q. 1916, wasn't it? A. I don't know which, it was either 1915 or 1916. Q. It was in 1916 that you were divorced in this court room, weren't you—it was in the May Term, 1916, wasn't it? A. I guess it was. Mr. Keith: If I remember the law correctly, and the rule of evidence, it is not applicable in a case like this. I think the rule is that the husband or wife, in cases of this character, can testify as to all the facts and circumstances in the case. Now, in divorce cases, very often there is a charge of adultery and they are allowed to testify. In cases where either spouse is injured by the other party, I don't think this rule would apply. The Court: I don't think it extends to this character of cases. The statute makes special provisions for divorces. I think the rule would apply in this case and the objection will be sustained."

A husband or former husband is incompetent in the character of the case at bar to give evidence of facts against the wife which would tend to establish her guilt if the evidence relates to a time when the marriage relation existed. [State v. Shreve, 137 Mo. 1, 38 S. W. 548; State v. Ulrich, 110 Mo. 350, 19 S. W. 656; State v. Berlin, 42 Mo. 572; Kelly's Criminal Law and Procedure (3 Ed.), sec. 270; 1 R. C. L., p. 647.] In State v. Ulrich, supra, speaking of a bigamy case the court said: "Not only was the first wife incompetent, but the letters produced by her and in her custody, purporting to have been written by defendant to her, were also inadmissible." In State v. Berlin, supra, a case embraiing adultery and lascivious cohabitation the court speaking of the competency of the wife of the defendant to testify against him said: "The law excludes her from testifying in such a case upon principles of public policy. It is essential to the happiness of social life that the confidence subsisting between husband and wife should be sacredly protected and cherished in its most unlimited extent; and to break down or impair the great principles which protect the sanctities of that relation would be to destroy the best solace of human existence. The exceptions of this rule are few in number and are only allowed for the sake of public justice, or for the protection of the wife in her life and liberty. Certainly the reasons of the rule, as above stated, are broad enough to cover every imaginable proceeding against the husband not embraced in these exceptions."

The record, excluding the evidence of the husband, shows that defendant, Mrs. Adams and her husband were, at the time of the trial, divorced, but this would not make him a competent witness in this cause to testify against his former wife. [State v. Kodat, 158 Mo. 125, 59 S. W. 73.] It appears that practically all of the evidence by the husband tending to show that Mrs. Adams was a married woman during the period of the alleged cohabitation was brought out by defendants in an endeavor to show that T. S. Adams was an incompe-

tent witness; and it does not appear that defendants made any request to have the jury withdrawn while T. S. Adams was being examined by defendants touching his competency to testify. Neither did defendants after the court had sustained their objection, ask to have stricken out the evidence of Adams, nor did they ask that the jury be instructed to disregard the matters and things testified to by Adams. This being the situation and there being other competent evidence to support the verdict, we do not consider the circumstance of Adams' evidence reversible error.

Finding no reversible error, the judgment is affirmed. *Sturgis, P. J.,* and *Farrington, J.,* concur.