Van Buren, (a slave,) *v.* The State, 24 Miss. Rep., 512.

### Burglary.

The signing and sealing of bills of exception is clearly a ministerial and not a judicial act, and the statute, (Hutch. Code, 890,) providing that bills of exception may, under circumstances, be signed by the attorneys of the court, is constitutional.

Where confessions were made on one day, under the influence of fear from previous whipping, and a threat of further punishment, and were repeated the day following to another person, (the master of the accused,) such repeated confessions are properly presumed to have been made under the same fear and apprehension, and ought not to be given in evidence on the trial.

In the case of Peter, (a slave,) v. The State, cited by the court, they say, "that after the fact is known, that either the influence of hope or fear existed, superinducing the confessions, explicit warning should be given to the prisoner of the consequences of a confession, and it should be likewise manifest that the prisoner understood such warning, before his subsequent confessions could be given in evidence.

Error to the Circuit Court of Hinds County.   Barnett, J.

The plaintiff in error was indicted for burglary, was convicted, and sentenced to be branded and whipped.   The further facts are sufficiently stated in the opinion of the court.

*Guion & Wharton*, for the plaintiff in error, contended that the confessions of the prisoner were improperly admitted as testimony, being made under the influence of fear, threats and compulsion; and cited the case of Peter v. The State, as decisive of the one at bar.

The statute authorizing counsel to sign bills of exception in cases in which the judge refuses to do so, is constitutional.   It is objected, that the judge so refusing may be proceeded against by impeachment.   Grant it,—but the inquiry recurs: What remedy does that afford the injured party, who is entitled to have the history of the trial certified to this court?

*D. C. Glenn*, attorney general.

The act of 1842 is unconstitutional, and there is no bill of exceptions in the record.   See Constitution, Art. 4, § 10, 11, 12, 13, 14 and 15; Brier v. Williamson, 7 S. & M., 15; 2 How., 856; 3 ib., 252.

Yerger, J.:

The bill of exceptions in this case was signed and sealed by

two attorneys of the court, according to the provisions of the Act of 22d February, 1840, Hutch. Code, 890.

It is insisted by the attorney general, that this act of the legislature is unconstitutional, because it confers upon the attorneys those powers and attributes which belong to the judge, and is therefore an infringment upon the judicial prerogative. If this argument be correct, we must disregard the bill of exceptions, as a nullity, and affirm the judgment of the court below; as the only error assigned by the prisoner's counsel, refers to the action of the court set out in the bill of exceptions.

The practice of taking bills of exceptions seems to be entirely a statutary regulation, and was originally established by the Statute of Westminster, 2, (13 Edward 1,) ch. 31, which enacted that " if the party write the exception, and pray that the justices may put their seals to it for testimony, the justices shall put their seals, and if one will not another shall. And if the king, on complaint made of the justices, cause the record to come before him, and the exception be not found in the roll, and the party show the exception written with the seal affixed, the justice shall be commanded to appear at a certain day, to confess or deny his seal; and if the justice cannot deny his seal, judgment shall be given according to the exception, as it may be allowed or disallowed." Tidd's Pr., 862.

According to the further provisions of the statute, if the judges refuse to sign the exceptions, the party aggrieved had a writ, founded on the statute, commanding them to put their seals. This writ contains a surmise of an exception taken and overruled, and commands the justices, if it be so, that they put their seals, upon which, if it be returned by the judges, that it is not so, an action lies for a false return, and thereupon the surmise is tried, and if it be found so, damages are given; and upon such recovery there issues a peremptory writ. Tidd's Pr., 864. The sole object in allowing bills of exceptions is, to perpetuate for the use of the appellate court a full and complete history of the facts occurring *in pais* during the progress of the cause in the inferior court. It is made a part of the record, for the inspection and use of the superior court, to enable it to proceed to judgment in correcting any errors that may have occur-

red in the court below.  In the mere signing and sealing of a bill of exceptions, no judgment of the court is required, no act of the judicial mind is demanded.  It is purely ministerial in its character, and might be as readily performed by the clerk as recording the verdict of a jury, nor can we see that any judicial function is exercised in preparing a history or statement of the case as it occurred in the court below.

We have no doubt that it would be perfectly competent for the legislature to abolish altogether the practice of taking bills of exceptions, and to substitute in its place any other mode deemed appropriate to bring before the higher court evidence of the action which took place in the inferior court; and accordingly we find that, to some extent, this has been done by the act of the 3d March, 1846, (Hutch. Code, 893,) which provides " that charges given or refused by the court, shall be so noted at the time, by the clerk, and when so noted and endorsed form a part of the record in the high court, without any bill of exceptions."

We are, therefore, clearly of the opinion that the act of the legislature directing the method of taking bills of exceptions, which was resorted to in this case, is constitutional, and that the bill of exceptions in this record is properly taken according to the provisions of that act.

This brings us to the consideration of the errors assigned by the counsel for the prisoner.  We do not deem it necessary to refer to more than one, as in our opinion the judgment must be reversed on that ground.

Thomas Cooper was offered as a witness for the state, who proved that he had hired the defendant from Birdsong, to whom he belonged; that going into his stable at night, on the 15th of December, he perceived that his horse had been ridden, and supposed, from his appearance, that a bag of potatoes had been carried on him.  Suspecting the prisoner to have ridden the horse, he called him up next morning and charged him with the fact, and also with having carried off a bag of potatoes.  This the prisoner denied.  He then whipped him, but obtained no confession.  In the evening he again took him up, and threatened to whip him again, when he confessed what articles he had, to wit: two jugs of whisky and two loaves of sugar, and where

they could be found, and accompanied the witness to the place and showed him the articles. The witness then asked him to state when and where he had obtained them, when, the witness says, he voluntarily and without any threat, confessed that he had taken them the night before from the store of Birdsong and Gory, which he entered by means of a false key. On the next morning, Tuesday, the witness informed Birdsong, the master of the slave, of these facts, and on the evening of that day Birdsong accompanied witness home, when the slave being called before them, witness said to him : " Van, here is your master, who has come for the things you took ;" and thereupon the prisoner, without any threat made or any promise given or reward offered, voluntarily confirmed the confession he had previously made to the witness. This confession, thus made on Tuesday to Birdsong and the witness, the court permitted to be given in evidence, although objected to by the prisoner's counsel.

No objection is made to the admission of that part of the evidence of the witness detailing the conduct and action of the prisoner in pointing out the whisky and sugar. These are facts which it was certainly competent to prove. So much, however, of the confession made to the witness on Monday, as related to the time and manner in which the prisoner alleged he had obtained the articles, ought to have been and was properly excluded by the court, as it was manifestly obtained under the influence of fear, arising from the previous whipping and the threat of further punishment. The confession made the next day to witness and Birdsong, the court permitted to go to the jury, and we think erroneously.

In the case of Peter, (a slave,) v. The State, 4 S. & M., 31, confessions obtained under very similar circumstances were held to be inadmissible ; the court remarking that, after the fact is known, that either the influence of hope or fear existed, superinducing the confession, explicit warning should be given to the prisoner of the consequences of a confession, and it should likewise be manifest that the prisoner understood such warning before his subsequent confessions could be given in evidence.

We think the judgment should be reversed, and a new trial granted.