# CASES

## ARGUED AND DETERMINED

IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI.

### JANUARY TERM, 1874, AT JEFFERSON CITY.

---

STATE OF MISSOURI, Defendant in Error, *vs.* BENJ. JONES, Plaintiff in Error.

1. *Practice, criminal—Evidence—Confessions.*—In order that a confession may be received in a criminal case, it must be voluntary ; it will be excluded, if it was induced by a promise of benefit or favor, threats of intimidation or disfavor, by a person having authority in the matter.
2. *Practice, criminal—Confessions—Admissibility of.*—When a confession has once been obtained by means of hope or fear, subsequent confessions are presumed to come from the same motive, and are inadmissible, unless it is shown that the original motives have ceased to operate.
3. *Practice, criminal—Confessions—Artifice.*—Confessions are not inadmissible because produced by artifice ; *e. g.,* by persuading the prisoner, that his accomplices were in custody,·or that they had divulged the facts relative to the crime.

### *Error to Cole Circuit Court.*

*E. L. King & Bro.,* for Plaintiff in Error.

I. The confession of the defendant was inadmissible in evidence.   (State vs. Brockman, 46 Mo., 566.)

*J. R. Edwards,* for Defendant in Error.

WAGNER, Judge, delivered the opinion of the court.

The only question at all important to be considered in this case is, whether the confession made by the defendant was properly admitted in evidence against him. From the record it appears, that the defendant, with several others, was indicted for killing one Hildebrand in Moniteau County.

A short time after the commission of the murderous act, the defendant was arrested in Miller County. He denied all knowledge of the crime, and the party, in whose possession he was, hung him twice by the neck, and extorted a statement from him in regard to the murder. He was then taken back to Moniteau County, and when he arrived in California, the county seat of that county, and whilst he was sitting on his horse, one Hickox went up to him and shook hands with him, and told him that he was sorry to see him in the fix that he was in. The prisoner said that he had done nothing. Hickox then told him that he was afraid he was in a very bad fix, because Blankenship (who was alleged to be a participator in the crime) had said, that the prisoner and two other men had come to his house, and forced him to pilot them through the prairie to Hildebrand's house, and therefore the prisoner must be the murderer. The prisoner then asked Hickox, did he say that? And Hickox replied, that he did, and that he, the prisoner, must know whether it was true or not. The parties then separated, and afterwards the prisoner sent for Hickox to come and see him in the back room of a store-house, where he was confined. He then said to Hickox, that Blankenship had betrayed them, that he had made up his mind to tell the whole thing, and he then made a detailed confession of all the facts relating to the murder.

Before a confession can be received in evidence in a criminal case, it must be shown that it was voluntary. And a promise of benefit or favor, or threat of intimidation or disfavor, held out by the person having authority in the matter, will be sufficient to exclude a confession, made in consequence of such inducement, either of hope or fear. (State vs. Brockman 46 Mo., 566.) .

In this case, Hickox, the person to whom the confession

was made, was a private citizen, had no authority in the matter, nor does it appear that any threats or inducements were held out from any source to obtain the confession. It is true, that on the preceding day the prisoner had been brutally treated; but that had been done by a different party, and it is not shown, that any of them were present exerting any influence when the confession to Hickox was made.

Where a confession has once been obtained by means of hope or fear, confessions subsequently made are presumed to come from the same motive; and, if it is not shown that the original influences have ceased to operate, they are inadmissible. (1 Whart. Crim. Law, § 594; Roscoe Crim. Ev., 45; Peter vs. The State, 4 Smed. & Mar., 31; Comm. vs. Harman, 4 Penn., 269; Van Buren vs. State, 24 Miss., 512.)

The cases above cited show, that in each instance the prisoners were intimidated, and under the influence of threats made the confessions before the magistrate when they were being examined, and the subsequent confessions were made before the same magistrates upon the basis of the first ones. As the magistrates were persons in authority, and were regarded as having the prisoners in their power, it would be necessary to show, that the fear, under which the first confession was made, had ceased before the second one could be received. The presumption would be, that under all the surroundings it was not voluntarily made, and that presumption would have to be removed by evidence. I can find no authority, however, for the rejection of the confession in the case now under consideration. It was not made to any of the parties who had previously been guilty of inflicting the outrage on the prisoner. It was made without solicitation, and without any inducement being held out, after the prisoner had considered the matter and come to the determination to make a full disclosure. Hickox had no authority or power in the case, and was incapable of rendering any favor or relief by virtue of official position. Of all this the defendant was well aware, and nothing was said to him to produce a contrary belief. He was impressed with the idea, that Blankenship had

betrayed him, and therefore he considered that he might as well tell the whole truth. Whether Blankenship had made the disclosure and exposed the crime, is of no importance.

Had it been a mere artifice, the case would not be altered; as no objection can be taken because the confession was made under a mistaken supposition, that some of the defendant's accomplices were in .custody, or that they had divulged the facts in relation to the crime, and this would be so, even though the suppositions were created by artifice, with a view to obtain the confession. (1 Whart. Crim. Law, § 691; Roscoe's Crim. Ev., 47; R. vs. Burley, 2 Stark. Ev., 12 n.; 1 Phil. Ev., 164; 2 Russ. Cr., 845.)

Under every view that we have been able to take of the case, the confession seems to have been entirely voluntary. It was made without any threats, fears or hopes. Not only so, but it was made without solicitation emanating from any source. The prisoner sent for Hickox, asked for the interview, and said that, after thinking over the matter, he had concluded to divulge the whole truth. There is here an utter absence of all the tests which would warrant the exclusion of the confession. I think it was properly admissible in evidence, and that the court did not err in permitting it to be received.

The prisoner was convicted of murder in the second degree, and sentenced to the penitentiary, and the judgment of the court below is affirmed. The other judges concur.