The State v. Jackson.

---

## THE STATE v. JACKSON, *Appellant.*

DIVISION TWO.

1. **Criminal Law:** JOINT INDICTMENT: PRESUMPTION. Where two persons are jointly indicted, and the record shows that on a day named one of them pleaded guilty, and then after the entry of said plea recites that the trial of the other defendant was had, and sets forth the proceedings therein, it will be presumed in the absence of evidence to the contrary that the plea of guilty was first entered.

2. ———: ———: CODEFENDANT AS WITNESS. Where one of two persons jointly indicted has pleaded guilty, he is competent to testify against the other defendant, and can do so without judgment having been entered against him.

The State v. Jackson.

3. ———— : ———— : JUDICIAL NOTICE. Where two persons are jointly indicted, and no severance is ordered, the plea of guilty is part of the record of the trial, there being but one case, and the court will take judicial notice of such plea.

4. Criminal Practice: ACCOMPLICE, CONVICTION ON TESTIMONY OF. A conviction can be had on the uncorroborated testimony of an accomplice where the jury, after having been duly cautioned by the court, is fully satisfied that his testimony is true.

5. Burglary and Larceny: SUFFICIENCY OF EVIDENCE. The evidence in this case held sufficient to support a conviction of burglary and larceny.

*Appeal from Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

*Draffen & Williams* for appellant.

(1) The court erred in permitting James Murray to testify in favor of the state, and against the defendant Jackson. The indictment is a joint one against witness and Jackson, and the state had no right, under the statute, to swear him over the objections of the defendant. R. S. 1889, secs. 4217, 4218 ; *State v. Chio Chiagk*, 92 Mo. 406. (2) The court committed error in refusing to give defendant's instruction, numbered 2, as originally asked by him. There was not a scintilla of evidence of any corroboration of Murray's testimony. There was no evidence outside of the accomplice's testimony that connected Jackson in any manner with entering the billiard hall. *State v. Chio Chiagk*, 92 Mo. 416 ; Whart. Crim. Ev., sec. 442. (3) The only evidence that the state offered, for the purpose of corroborating the testimony of Murray, were the facts that Jackson, at the time of the burglary, owned or had in his possession a pair of gum boots, and that next morning after the burglary some tracks, apparently made with gum boots, were found in alley near billiard hall, and that Jackson, on night of burglary, was seen at

James Carter's, on Spring street, about the hour of twelve o'clock. Do these facts in any way connect Jackson with the burglary, or do they in any manner corroborate the evidence of Murray (a confessed thief)? Where there is no evidence of a fact, the court should, as a matter of law, so tell the jury.

*John M. Wood,* Attorney General, for the State.

(1) Where the case as to one defendant jointly indicted with another is disposed of by plea of guilty, or by verdict and conviction or acquittal, he is a competent witness for the other. It appeared that Murray had pleaded guilty. His testimony was, therefore, competent. *State v. Hunt,* 91 Mo. 491. (2) No other objections were saved as to the admission or rejection of any other testimony in the cause. (3) The only complaint in the motion for a new trial as to the instructions is that the court refused to declare the law as asked by defendant. The only instruction asked by defendant, which was refused, was instruction, numbered 2. This was clearly erroneous, for the reason that it told the jury that there was no evidence corroborating that of James Murray, when, in fact, there was testimony introduced which tended to show that Jackson was guilty, and which corroborated the statement made by his confederate, Murray. The instruction given by the court as to the testimony of an accomplice was the proper one to give in the case. *State v. Walker,* 98 Mo. 95, and cases cited.

THOMAS, J.—Jackson and James Murray were indicted in the Cooper county circuit court, for burglary and larceny. Jackson, on a separate trial had, was found guilty of both crimes, and sentenced to imprisonment in the penitentiary for five years, and he prosecutes this appeal.

I. The state offered James Murray as a witness in the case. Defendant Jackson objected to his testifying, because the indictment was against both for the same offense. The court overruled the objection, and Murray gave his testimony in the case, and this is urged in this court for error. The record shows that Murray pleaded guilty to the charge on the thirteenth day of November, 1890, and after the record of this plea it is added: "And afterwards, to-wit, at said term of court, and on the thirteenth day of November, 1890, the following proceedings were had, to-wit." Then follows the record of Jackson's trial.

It is contended, *first*, that the record fails to show that Murray's plea of guilty was made before he was sworn as a witness, and, *second*, if it does he was still incompetent as against Jackson. We think it fairly inferable from the record that Murray entered his plea of guilty prior to the time he was offered and sworn as a witness. The plea was entered of record first, and then follows the entry that afterwards the trial of Jackson was proceeded with. If this plea had not in fact been made when Murray was sworn, he was not a competent witness, and should not have been permitted to testify. *State v. Chyo Chiagk*, 92 Mo. 406. Hence, we will presume, in the absence of anything in the record to the contrary, that the plea was made and entered first.

It is argued that the copy of this plea is not properly in this record, and, therefore, cannot be considered by this court in the determination of this question. We do not concur in this contention. The indictment is a joint one against both Jackson and Murray, and this plea of guilty made by Murray is a part of the record in the same case, no severance having been asked or ordered, and the court will take judicial notice of its own orders in the same case. *State v. Bowen*, 16 Kan. 475; *Minor v. Stone*, 1 La. Ann. 283; *Pagett v. Curtis*, 15 La. Ann. 451; *Brucker v. State*, 19 Wis. 539;

*Jordan v. Circuit Court*, 69 Iowa, 177; *Withers v. Gillespy*, 7 S. & R. (Pa.) 10; *Dawson v. Dawson*, 29 Mo. App. 521. But it is insisted that, conceding this plea to have been entered first, still Murray was not a competent witness for the state. We have no statute declaring a codefendant, who has pleaded guilty or been convicted, a competent witness in behalf of the state, and we are relegated to the common law to determine Murray's competency. Bishop lays down the correct rule thus: "Whereupon the law is, that a joint defendant cannot be a witness for or against the others, even on separate trial, till the case is disposed of as to him by a conviction or acquittal or by a *nolle prosequi*. But judgment on the conviction need not be rendered; therefore, the defendant who is to testify pleads guilty, and then testifies." 1 Bish. Cr. Proc. [3 Ed.] sec. 1166; *Com. v. Smith*, 12 Metc. 238; Whar. Am. Cr. Law, sec. 794; 1 Phil. Ev. [4 Amer. Ed.] 64-5; Whar. Crim. Ev. [9 Ed.] sec. 439. Murray was a competent witness, and the court committed no error in allowing him to testify in behalf of the state.

II. The next contention is, that the court erred in giving and refusing instructions. At the instance of Jackson the court instructed the jury that, "The testimony of an accomplice in a crime, that is, a person who aids, assists, encourages and abets in committing the crime, is admissible; yet, the evidence of such a person, when not corroborated by the testimony of some person or persons, not implicated in the crime, as to the guilt of the defendant, ought to be received with great caution by the jury, and they ought to be fully satisfied of its truth before they should convict the defendant on such testimony."

Jackson asked the court to give, and the court refused to give, the following: "The jury cannot find the defendant, Walker Jackson, guilty on the testimony alone of James Murray, the codefendant in this case, unless his testimony has been corroborated by the

testimony of other witnesses, that Jackson actually participated in the breaking and entering the billiard hall of Joseph Barth, as stated in the indictment, and there is no evidence of such corroboration ; '' but in lieu thereof, on its own motion, the court gave the following :
''The jury cannot find the defendant, Walker Jackson, guilty on the testimony alone of James Murray, the codefendant in this case, unless his testimony has been corroborated by the testimony of other witnesses *that Jackson actually participated* in the breaking and entering the billiard hall of Joseph Barth, as *stated in the indictment.*''

We think it is the settled law of this state that a party may be convicted on the uncorroborated testimony of an accomplice alone. *State v. Harkins,* 100 Mo. *loc. cit.* 672, and cases cited. And this doctrine is supported by the adjudged cases and text-writers. 1 Bishop Crim. Proc., sec. 1169 ; 8 Crim. Law Mag. 967, and cases cited ; Roscoe's Crim. Ev. [ 8 Fd.] p. 201 ; 1 Green. Ev., sec. 380 ; Whar. Crim. Ev., sec. 441. The instructions in the *Harkins case, supra,* which were approved by the whole court, enunciate the true rule in regard to the testimony of an accomplice, and how it should be regarded and weighed by the jury. Hence, when the court told the jury in the case at bar that Jackson could not be convicted on the testimony of Murray alone, unless '' corroborated by other witnesses, that Jackson participated in the breaking and entering the billiard hall,'' it went farther than this court ever went and farther than the law warranted. A conviction can be had upon the testimony of an accomplice, if the jury, after being duly cautioned by the court, is fully satisfied that his testimony is true. The instruction being more favorable to Jackson than the law warranted, he cannot be heard to complain.

III.   Did the evidence in the case warrant the conviction ?   The evidence showed that Joseph Barth kept a

billiard hall in Boonville, and had in it a money register in January, 1890. Defendant Jackson is a colored man and worked for Barth in this hall, quitting work there about two weeks prior to the burglary. On the night of the thirteenth day of January, 1890, the hall was broken into by some one, and the register carried away. The burglary occurred after twelve o'clock at night. James Murray is also a colored man, and he and Jackson were together at Jim Carter's, in Boonville, and left there together about twelve o'clock of the night of the burglary. Next morning after the discovery that the hall had been broken into and the register taken out, an examination was made for tracks in the alley adjoining, and tracks were seen which seemed to have been made by a person wearing gum boots, the evidence showing that defendant Jackson had on gum boots when he was at Carter's on the night of the burglary. The register was found in the Missouri river, $5 that had been left in it having been taken out. Jackson at the time lived with his brother-in-law, Henry Williams, in Boonville. James Murray, the next morning after the burglary, said that Jackson was implicated in it, and that he (Murray) had assisted. Some cigars that were also taken out of the billiard hall were found on Murray, and Murray took the officers to the river and showed them where the register had been thrown in. Next morning after the burglary, Henry Williams sent Ed. Bossy to inquire of Murray if Jackson was implicated in the crime.

The evidence on the part of Jackson was to the effect that he had gone to bed at Williams' about ten o'clock that night, and Mrs. Williams testified that she was up and down all night looking after her sick children, and Jackson was in bed all night after ten o'clock. This is substantially the evidence aside from that given by Murray. He testified that Jackson proposed the burglary to him and they tried to break into the hall the night before the crime was consummated, they

being frightened away by a light. The night of the burglary, he and Jackson were at Jim Carter's and played a game of pool, leaving there together between twelve and one o'clock; that Jackson asked him to go with him to commit the crime. They went. The window was raised and Jackson went in and got the register, which they took down near the river and opened, finding in it between $4 and $5 in nickels and dimes which they divided equally between them, and then threw the register into the river. The next morning Murray, when arrested, told the same story about the burglary, implicating Jackson, that he told on the stand. From this summary of the evidence it will be observed: *First*, that if Murray's story is true, Jackson is guilty of burglary and larceny beyond any doubt. *Second.* Murray's story is corroborated by evidence *aliunde:* (1) Of the *corpus delicti;* (2) that Jackson was in the company of Murray about the time the crime was committed at an unseemly hour of the night; (3) that some one wearing boots made tracks near the window that was opened, and that Jackson wore gum boots the night of the burglary, and (4) that Murray, the next morning after the burglary, gave the same account of the transaction that he gave at the trial. From these considerations we cannot say that there was no evidence justifying the jury in giving credence to Murray's testimony, and convicting Jackson.

It was the peculiar province of the trial judge, in this case, when the chief evidence was given by an accomplice, to determine whether Jackson ought to have been convicted under all the evidence. He saw Murray, heard him testify, observed his manner on the stand, and, in the very nature of things, was better qualified to judge of his credibility than we are. The court gave the jury cautionary instructions in regard to Murray's testimony more favorable to Jackson than the

law warranted, the jury convicted the latter, and the trial judge refused to interfere with the verdict, and under all the circumstances we do not deem it our province to interfere.

With the concurrence of all of the judges of this division the judgment is affirmed.