THE STATE v. BLACK, *Appellant.*

### Division Two, March 1, 1898.

1. **Evidence:** INSTRUCTION: TESTIMONY OF AN ACCOMPLICE. An instruction that told the jury that the evidence of an accomplice must be corroborated, went too far. The rule is that the trial court should instruct the jury that the evidence of an accomplice should be received with great caution unless corroborated by the evidence of others not implicated; but it is also the law that a jury may convict on the uncorroborated testimony of an accomplice if they believe it to be true.

2. **Murder:** INSTRUCTIONS FOR LOWER DEGREES. Instructions submitting the issue whether defendant is guilty of manslaughter in the first and third degrees, when unsupported by the evidence should not be given. But when the defendant was convicted of neither crime, and there was no evidence tending to reduce the crime to any degree less than murder in the second degree, the giving of such instructions was harmless error.

3. ———: WITNESS: CO-DEFENDANT. The defendant and one Stewart were separately indicted for the same murder. *Held,* that Stewart was not thereby disqualified from testifying against the defendant.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*Zach. J. Mitchell* for appellant.

Defendant's instruction in nature of a demurrer to the evidence should have been sustained. Among other reasons because no witness saw defendant at the place of the killing; no identification of the pistol in evidence showed it to have been a factor in the killing. But to the contrary. The State merely proved, if anything, it was found at defendant's home two miles distant upon the day following, whilst the

State proved by Deputy Autenreith without qualifica-
tion that James Stewart had a pistol of that calibre
and there was but one pistol shot fired—Query? whose
pistol fired it? Is there not a reasonable doubt? and
yet, the jury found their verdict upon Stewart's evi-
dence. The sacks were not traced to him, nor the
strings saving by the uncorroborated testimony of
Autenreith given as we submit under most peculiar
and compromising circumstances. *Gerrans v. Wengler*,
51 Mo. App. 615; *Berger v. Railroad*, 52 Mo. App.
119; *State v. Snyder*, 44 Mo. App. 429; *State v. Avery*,
113 Mo. 475; *State v. Woodland*, 111 Mo. 228.

*Edward C. Crow*, Attorney-General, and *Sam B.
Jeffries*, Assistant Attorney-General, for the State.

(1) Where there is sufficient testimony to create
an inference of guilt, the finding of the jury will not
be disturbed upon that ground alone. The circum-
stances in this case, aside from the evidence of witness
Stewart, are sufficient to warrant instructions on the
question of guilt to the jury. (2) The intentional
killing with a deadly weapon creates a presumption of
murder in the second degree in the absence of proof
to the contrary. *State v. Wilson*, 98 Mo. 440; *State v.
Stephens*, 96 Mo. 637; *State v. McKinzie*, 102 Mo. 620;
*State v. Harris*, 76 Mo. 361; *State v. Eaton*, 75 Mo.
586. The instruction given by the court upon this
point is full and complete. *State v. Curtis*, 70 Mo.
594; *State v. Bohamon*, 76 Mo. 562; *State v. Frazier*,
137 Mo. 330. (3) Objection is also made to the
relevancy of the testimony of the witness, Stewart,
who had been previously indicted and convicted of
murder in the second degree and sentenced to the
penitentiary for ninety-nine years for the same offense.
It will be observed by the court that these two parties,

Stewart and Black, although indicted for the same offense, were indicted separately. Upon this question Bishop says: "One of two or more joint defendants can not be a witness for or against another, even on a separate trial until the case as to himself is disposed of by a plea of guilty or a verdict of conviction or acquittal, or discharge on a plea in abatement. Then he may. Sentence need not be rendered. Of course if the indictments are separate, he may be a witness, though the offense is supposed to be joint." 1 Bishop's Crim. Proc., sec. 1020. (4) The only thing that disqualifies one co-defendant in testifying against another is the fact that both are parties of record to the same case. If they are separately indicted, or if the case as to one has been disposed of, he becomes qualified as a witness either for or against the other. 1 Phil. Ev. [4 Ed.], pp. 64, 65; 1 Bishop's Crim. Proc., sec. 1166; 1 Greenl. on Ev., sec. 363.

GANTT, P. J.—From a conviction of murder in the first degree in the circuit court of St. Louis county, at the May term, 1897, the defendant prosecutes this appeal.

On the night of May 5, 1897, in St. Louis county, near Bonfils Station, Michael Prendergast was shot and killed between his dwelling house and his corn crib, about eleven o'clock. He and his daughter, a young lady, and hired man, James Phfals, spent the evening at his home and retired about ten o'clock that night. Somewhere near eleven o'clock Miss Prendergast heard her father going out of the back door and, calling to him, inquired, "Is that you?" and he replied, "Yes, I am going out to listen." A few moments afterward she heard the report of a gun fired. She heard three shots, very close together, from the direction of the corn crib on the place. She immediately

ran out and saw her father going toward the chicken house to lean against it. She ran to him, caught him in her arms, but he fell to the ground and she cried out for assistance. At this time she noticed a wagon with two men in it going west up the public road, which ran about sixty feet from the home of the deceased, and about twenty-five feet from the corn crib. She called after the men in the wagon that they had murdered her father. Mr. Prendergast died about midnight. The following morning upon an examination of the crib, three sacks filled with corn were found in the crib, two were tied with a fish line and the other untied. There was also an empty sack. None of these sacks were there the evening before the murder. At the same time a knife and more string was found in the crib. The evidence establishes that on that same night, the defendant Walter Black and James Stewart by arrangement went to the house of a negro man by the name of Costly Black, a relative of defendant. They traveled in a two horse wagon drawn by two horses, one belonging to Stewart, the other to defendant. After reaching Costly Black's house they remained playing dominoes until about eleven o'clock and left in the wagon in the direction of the house of deceased. Stewart testified that when they reached a point near the residence of deceased they stopped and defendant got out of the wagon, crossed the lot toward the house, Stewart remaining in the buggy. Stewart testified that defendant told him he was going to get some corn over there in the field of Prendergast; that he didn't have enough to feed that night. He brought the sacks with him. He said that while defendant was gone he heard two shots fired. Defendant was gone about ten or fifteen minutes and came back running. Upon his return Stewart asked him what was the matter and he said he had shot Mr. Prendergast. He had a pistol in

his hand.   They heard Miss Prendergast call to them as they drove off.   They went to Stewart's house that night after the shooting.   The knife found in the crib was identified as belonging to defendant, and also the pistol found at his house next day.   Stewart was separately indicted, tried and convicted of murder in the second degree and was under sentence when he testified.   Defendant did not testify.

The court instructed the jury on murder in the first and second degrees, manslaughter in the first and third degrees.   The jury returned a verdict of guilty of murder in the first degree.

Various errors are assigned and we will consider them in the order of their assignment.

I.   The demurrer to the evidence was very properly overruled.   The criminating circumstances, if believed by the jury, were amply sufficient to sustain a conviction of murder in the first degree.   It was for the jury to weigh the positive and direct evidence of Stewart, accomplice as he was, and believe or reject it as it impressed them with its truth or falsity.   If they credited it, it proved that defendant armed with a deadly revolver was engaged in stealing the corn of Mr. Prendergast from his barn in the dead hour of the night.   The evidence of the daughter of the deceased demonstrated that her father had heard some one about his premises and had risen and gone out to listen and that he had discovered the defendant in the act of stealing his corn and thereupon three shots from that crib were heard and almost instantly the deceased is seen to stagger and fall from a mortal wound caused by a pistol shot and two men are seen to drive off in a hurry.   That defendant admitted he shot Mr. Prendergast.   His knife was found in the crib and his proximity and known companionship with Stewart that night in and about the immediate premises make out

an unusually clear and satisfactory case.    His own evidence in Stewart's case made out equally as clear case against Stewart and we have little doubt that both were guilty.

II.    The objections to the instruction for murder in the first degree are without merit.    It was substantially such as has often met the approval of this court.

III.    The instruction as to the character and amount of proof necessary to sustain a conviction on circumstantial evidence was in the most approved form and exceedingly favorable to defendant, as the case was not wholly made out by circumstantial evidence.

IV.    The court went too far when it required that the accomplice should be corroborated.    While this court has held that the trial court should instruct the jury that they should receive the evidence of an accomplice with great caution unless corroborated by the evidence of others not implicated in the offense charged, it has repeatedly held that the jury could convict upon the uncorroborated evidence of an accomplice if they believed his evidence to be true.    *State v. Harkins*, 100 Mo. 666; *State v. Jackson*, 106 Mo. 174; *State v. Woolard*, 111 Mo. 248; *State v. Minor*, 117 Mo. 302; *State v. Marcks*, 140 Mo. 656.

V.    The instruction declaring that the defendant was entitled to an acquittal if the jury had a reasonable doubt that the defendant was present at the time and place of the killing of deceased or in any manner aided, abetted or participated in the same, was entirely favorable to defendant and he has no ground to complain of it.

VI.    Instruction number 11 has been so often approved that it is unnecessary to reproduce it or comment upon it.    It is the settled law of criminal procedure in this State.

VII.   We agree with counsel for defendant that instructions numbers 4 and 5 given by the court *ex mero motu,* defining manslaughter in the *first* and *third* degrees, and submitting the issue whether defendant was guilty of either of said degrees of homicide, were unsupported by the evidence and should not have been given, but they could not possibly have injured the defendant as he was not convicted of either and there was not a scintilla of evidence tending to reduce the crime to any degree less than murder in the *second* degree.

VIII.   No error occurred in permitting Stewart to testify.  Defendant was not jointly indicted with Stewart and hence the rule disqualifying a co-defendant from testifying has no application.   *State v. Walker,* 98 Mo. 95; *State v. Umble,* 115 Mo. 452; *State v. Stewart,* 142 Mo. 412.

The evidence evinces a purpose to rob and steal the property of an unoffending citizen and a deliberate and premeditated design to kill and murder him in the night, if perchance he should discover them in the perpetration of their crime.   The verdict is in accord with the testimony and the judgment is affirmed and the sentence of the law is directed to be executed.   SHERWOOD and BURGESS, JJ., concur.