THE STATE v. JOHN F. WILLIAMSON, Appellant.—123 S. W. (2d) 42.

Division Two, December 20, 1938.

*Raymond S. Roberts* for appellant.

*Roy McKittrick, Wm. Orr Sawyers* and *Franklin E. Reagan*, Assistant Attorneys General, for respondent.

TIPTON, J.—This is the second appeal from a conviction of murder in the first degree for the killing of one George Williams. The first conviction, in which his punishment was assessed at death, was reversed by this court because the.trial court improperly admitted in evidence a signed confession of the appellant which was not a voluntary confession. That opinion is reported in 339 Mo. 1038, 99 S. W. (2d) 76.

The deceased lived alone in a cabin in the rural section of Ste. Genevieve County. His body was found in the woods about a half-mile from the cabin late in the afternoon of Sunday, August 11, 1935. His cabin had been broken into and certain articles of personal prop-

erty were missing therefrom, which were later found in the appellant's possession. While the sheriff, coroner, and others were on the way to recover the body, they came upon the appellant and a truck driver he had hired in the act of hauling two hogs from the premises of the deceased. The coroner testified that, judging by the condition of the corpse, death had taken place some thirty hours before he and the sheriff arrived at the place where the body was found. There was testimony that the appellant was seen going in the direction of the deceased's home and later returning therefrom carrying something in sacks about the time the killing must have .occurred. The appellant does not attack the sufficiency of the evidence.

The appellant's first assignment of error is that the trial court erred in admitting in evidence the testimony of the sheriff relative to a statement made by the appellant a day or two before the first trial. Testimony is that the sheriff asked, ''John, I want to know if you were by yourself when you shot or was somebody with you,'' and the appellant's answer was, ''I was by myself.'' This evidence was objected to on the ground that it was not voluntary as it was obtained through promises of clemency made by the officers and, therefore, should not have been admitted. In the preliminary examination before the court, it was shown that no promise was made by the sheriff until after the above conversation took place. (It was later in this conversation that the sheriff told the appellant that he would recommend to the prosecuting attorney that he be sent back to the Illinois penitentiary, and relying upon this promise the appellant made a written confession which we held to be error in the first trial.)

The evidence in the case at bar clearly shows that when the appellant answered, ''I was by myself,'' the answer was given previous to any promise having been made. ''If any promises were made to the appellant after his confession, it would not render such confession involuntary and objectionable as evidence.'' [State v. Meyer, 293 Mo. 108, 238 S. W. 457.] Upon this showing, we rule the answer above quoted to be admissible. [State v. Williamson, 339 Mo. 1038, 99 S. W. (2d) 76; State v. Gaskins, 89 S. W. (2d) 647; State v. Tharp, 334 Mo. 46, 64 S. W. (2d) 249; State v. Hart, 292 Mo. 74, 237 S. W. 473.]

The sheriff also testified as follows: ''Q. Did he tell you at Perryville when he got the clock and gun and axe? A. He said he was at George Williams' house on that Saturday, the 10th, and that he got them that day. Q. On August 10th, 1935? A. Yes.'' This conversation took place on October 25, 1936, after our decision had been rendered granting the appellant a new trial.

It is the appellant's contention that this statement was made subsequent to the promise made by the sheriff to the appellant. In other words, he contends that as the original or written confession was in-

voluntary, then all subsequent confessions would likewise be involuntary.

"Where a confession has been obtained under circumstances rendering it involuntary and inadmissible, a presumption exists that any subsequent confession arose from a continuance of the prior influence, and this presumption must be overcome before the subsequent confession can be received in evidence. The controlling influence which produced the prior confession is presumed to continue until its cessation is affirmatively shown, and evidence to overcome or to rebut this presumption must be very clear, strong, and satisfactory; if there is any doubt on this point, the confession must be excluded." [16 C. J. 722-723.] This rule has been uniformly followed in this State. [See State v. Jones, 54 Mo. 478; State v. Brown, 73 Mo. 631; State v. Ellis, 294 Mo. 269, 242 S. W. 952; State v. Condit, 307 Mo. 393, 270 S. W. 286; State v. Nagle, 326 Mo. 661, 32 S. W. (2d) 596.]

But, on the other hand, if no connection appears between the threats or promises that made the original confession inadmissible, and a subsequent confession offered in evidence, the subsequent confession will not be excluded. [State v. Hart, supra; State v. Hopkirk, 84 Mo. 278; State v. Patterson, 73 Mo. 695; State v. Jones, supra.]

However, we are unable to see how it could be claimed in this case that the influence created by this promise made to the appellant prior to the first trial could continue to the time the subsequent statements were made by him to the sheriff. Shortly after the promise was made by the sheriff that he would recommend to the prosecuting attorney that the appellant be sent back to Illinois, the appellant was placed on trial and convicted, receiving a death sentence. Certainly, after this case was reversed by this court, it could not be said that at that time the appellant was relying on the promise of the sheriff. There is no connection between that promise by which the written confession was obtained and the second statement in which he told where he obtained the clock, gun and axe. We rule this point against the appellant.

■ The testimony of Gene Radford, given in the first trial, was read from the bill of exceptions of that trial. The appellant contends because this was not signed by Radford it is reversible error. Testimony of a witness in a bill of exceptions is not signed by the witness. The signature of the trial judge is all that is required. It is true in homicide cases that the statute requires that a witness sign his testimony given at a preliminary hearing, and if not signed it cannot be read in evidence. [State v. Jamerson, 252 S. W. 682.] But that is not the situation here. In the case at bar, the testimony read to the jury was given at the first trial of this case. There could be no objection that due diligence was not shown to secure the presence of this witness at the second trial. In fact, the evidence shows that he left the State and his whereabouts were unknown at the time of the trial

to his kinsmen and acquaintances. The return on the subpoena shows that he was not found in the county. We rule this point against the appellant.

The appellant's last assignment of error is that the court erred in refusing Instruction No. 8, which is as follows:

"The Court instructs the jury that verbal statements, if any, made by the defendant in relation to the offense should be received with great caution; as they are subject to much imperfection and mistake, owing to the person speaking not having clearly expressed his own meaning, or the person spoken to not having clearly understood the speaker. It frequently happens also, that the witness, by unintentionally altering a few words or expressions really used, gives an effect to the statement entirely at variance with what the speaker actually did say."

To the writer's mind, this instruction is both argumentative and invades the province of the jury, but as we have ruled in some circumstances that an instruction of similar import should be given, we will not now overrule these cases. In the case of State v. Henderson, 186 Mo. 473, 85 S. W. 576, Judge GANTT exhaustively reviews the authorities, and while he concludes we are out of line with the weight of authority, yet he does state when such instruction should be given. In that opinion he says (Mo. l. c. 497):

"While the better opinion, upon authority and reason, would seem to be that it is not necessary to give the jury a cautionary instruction against the statements of a defendant, the practice of giving a general cautionary instruction that 'the evidence of verbal statements and admissions of the defendant should be considered with care and caution, taking into consideration the liability of the witnesses to misunderstand and misquote the words used,' has been so often approved by this court that we yield our assent thereto, especially as it is in behalf of the accused. A similar rule has been approved as to the testimony of accomplices. [State v. Harkins, 100 Mo. 666; State v. Black, 143 Mo. 171; State v. Jackson, 106 Mo. 174.]

"But we have often ruled that, while an instruction may be called for in some cases, and it may even be error to fail to give it, it does not necessarily follow it must be given in every case. Whether such a cautionary instruction should be given must depend on the facts developed in the case. Where the statements or admissions are merely casual statements extending over a long time, or there is a material variation between the witnesses, or the same conversation is differently narrated by different witnesses, or there is a direct conflict as to the statements or admissions, or the circumstances are such to indicate the witnesses may not have heard all that the defendant said, or were not in a position to hear all that the defendant said, or considerable time has elapsed and the memory of the witnesses may not be clear for that reason, then the instruction, as guarded in State v. Glahn, 97

Mo. 678, should be given if requested, but in this case, in view of the exceedingly fair, strong and liberal instructions given in behalf of the defendant, and especially as the court instructed the jury that, in weighing the testimony of the witnesses, 'they should take into consideration the conduct and manner of the witnesses on the witness stand, the *opportunity of the witness to know* the facts to which he or she testified, and his or her disposition to relate the same truly and correctly,' we are satisfied no prejudice resulted from the failure to caution the jury against the evidence of the witnesses as to the admissions and statements of the defendant.

"These witnesses were almost wholly disinterested and no attempt was made to impeach them or to contradict their testimony by proof of facts to the contrary of what they had sworn, and the statements were in no sense casual, but were the direct and positive statements of the defendant, fully corroborated by facts in evidence outside of his admissions.

"We are convinced that such a cautionary instruction as was approved in Glahn's case would not have changed the verdict of the jury."

This case is clearly within the exceptions announced in the Henderson case. In the first place, the alleged statements made by the appellant were not "casual statements" made "in the ordinary conversation," but were answers made to direct questions. [State v. Smith, 250 Mo. 350, 157 S. W. 319.] Moreover, the court gave the usual instruction on the weight of the evidence, and also an instruction on confessions. The statements made by the appellant were fully corroborated by the evidence outside of his admissions. We find no error in refusing this instruction.

The judgment of the trial court is affirmed. For the reason stated in State v. Brown, 342 Mo. 53, 112 S. W. (2d) 568, the cause is remanded to the trial court, with directions to have the appellant brought before it, and to impose a sentence of death by lethal gas, in accordance with the provisions of Laws of Missouri, 1937, pages 221-223 (Mo. Stat. Ann., secs. 3719, 3719a, 3721-3725, pp. 3267, 3268).

All concur.