Clarence W. MAHURIN, Appellant,

v.

STATE of Missouri, Respondent.

No. 55724.

Supreme Court of Missouri,
En Banc.

March 13, 1972.

Thurman, Nixon, Smith & Howald, James E. Bowles, Hillsboro, for movant-appellant.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief sought under Supreme Court Rule 27.26, V.A.M.R., from life sentence for murder in the first degree.

Lottie Fisk Mahurin, the wife of appellant-movant, Clarence W. Mahurin, died on or about March 17, 1949, under circumstances which resulted in a coroner's inquest. The movant testified at the inquest. After he had testified, a highway patrolman told the prosecuting attorney that Mahurin had been convicted of arson. The prosecuting attorney asked Mahurin to return to the stand and inquired whether or not he had been convicted of a felony. Mahurin denied such conviction. At the conclusion of the inquest, Mahurin was placed under arrest for perjury and taken to the St. Francois County jail. On March 18, 1949, a complaint charging perjury was filed in the St. Francois County Magistrate Court. On March 19, 1949, an attorney appeared on behalf of the defendant in the

magistrate court and upon his request bail was fixed at $5,000. In default of bail, Mahurin remained in jail. On March 24, 1949, a complaint charging him with first degree murder in the death of his wife was filed in the magistrate court. A grand jury returned an indictment for murder against Mahurin and on April 7, 1949, a copy of the indictment was served on him. On May 9, 1949, Mahurin was arraigned on the indictment. The court offered to appoint counsel for him, but Mahurin declined the offer and said that he would obtain counsel. Movant subsequently appeared in court twice without counsel and repeated his refusal of the court's offer to appoint counsel. A plea of not guilty was entered on the second of such appearances, on May 24.

On June 20, 1949, movant appeared in open court and announced that Mr. Henry D. Morris had been employed to represent him. On July 7, Mr. Morris and Mr. Charles Gray filed, on behalf of movant, a motion to suppress and a motion for change of venue. The motion for change of venue was heard on July 11 and sustained and the venue changed to Ste. Genevieve County. On August 8, depositions taken on behalf of defendant were filed. On motion of Morris, on August 26, movant was taken to State Hospital No. 4 for a determination of his mental capacity.

A pretrial hearing was held on the motion to suppress and the motion was overruled. Trial began October 14, 1949, with defendant represented by Morris and Gray. The trial required eight days and on October 24, the jury returned a verdict of guilty of murder in the first degree and fixed appellant's punishment at life imprisonment. Morris and Gray prepared and filed a motion for new trial. On November 28, appellant appeared in court with Morris. After detailed explanation by the trial court of the reason for the motion for new trial and the consequences of its withdrawal, movant stated that he wished the motion withdrawn. The request was acceded to, allocution granted and appel-

lant sentenced in accordance with the verdict. Subsequently, Mahurin sought and obtained a writ of error for review of his conviction. No transcript of the proceedings was filed and the review was limited to the record proper. On such record, the judgment was affirmed. State v. Mahurin, Mo.Sup., 240 S.W.2d 110. No transcript of the trial is now available.

A motion under Rule 27.26 was filed on behalf of Mahurin. Counsel were appointed to represent him. A two-day hearing was held. After the hearing, the trial court entered findings and conclusions adverse to the movant. On this appeal, four grounds of relief are urged.

I.

### Illegal Search and Seizure

The day following Mahurin's arrest, Sheriff Smallen of St. Francois County and two members of the highway patrol went to the Mahurin residence. They had no search warrant. According to the sheriff, he told Mahurin that he was going to his farm, and Mahurin replied: "Go ahead. You would go anyway." The officers picked up an oil stove and a blanket which they found in the yard. A motion to suppress the use of these items in evidence was filed on the grounds that they were the product of an illegal search. A hearing on the motion was held outside the presence of the jury. According to Mr. Morris's testimony at the 27.26 hearing, the state at the hearing on the motion to suppress relied upon Mahurin's consent to the search. The motion to suppress was overruled. The motion for new trial which was withdrawn assigned as error the trial court's ruling on the motion to suppress and the objection to the use of the evidence.

The 27.26 motion claimed that the evidence was obtained as the result of an illegal search. The trial court found that movant consented to the search; that the search was not constitutionally prohibited

and that, in any event, the issue was not subject to review under Rule 27.26.

■ Missouri followed the exclusionary rule on illegally obtained evidence (State v. Lock, 302 Mo. 400, 259 S.W. 116, 128[13], [14]) before such rule was made obligatory on the states as a matter of federal constitutional right in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. Mapp has no retroactive application. Linkletter v. Walker, 381 U.S. 618, 85 S. Ct. 1731, 14 L.Ed.2d 601. Therefore, the question here does not involve a federally protected constitutional right. Inasmuch as the matter here presented is one of state law, we adhere to the rule laid down in prior cases that the matter is not one for review on collateral attack under Supreme Court Rule 27.26. State v. Howe, Mo. Sup., 364 S.W.2d 546, 547[3]; State v. Engberg, Mo.Sup., 391 S.W.2d 868, 871[8]; State v. Holland, Mo.Sup., 412 S.W.2d 184, 185[1, 2].

The trial court's ruling that the matter was not reviewable on 27.26 is correct and we do not reach the other grounds relied upon by the trial court.

## II.

### Coerced Confession

Appellant contends that his statement made May 8, 1949 and used against him at the trial was involuntary as a matter of law and that its introduction into evidence was violative of constitutional rights.

The trial court's findings of fact on this issue include the following:

"This Court now makes specific findings of fact that Movant while in the custody of Sheriff Smallen between the dates of March 17, 1949 and May 9, 1949 was not physically nor mentally abused, was not abducted to the State of Illinois, nor there shot by law enforcement officers, nor confined to any conditions other than normal jail conditions, nor denied right of seeing friends and attorneys, particularly attorney Thomas Mathews prior to May 8, 1949, nor denied access to bondsmen, nor held incommunicado, nor denied bail, nor subjected to constant interrogation, nor was he intimidated, beaten, mistreated, coerced, threatened, nor harassed by repeated questioning.

"This Court specifically further finds that Movant, on May 8, 1949, before giving the oral, incriminating statement, was advised by Prosecuting Attorney Tomlinson that he did not have to make a statement, that anything he said could be used against him in a court of law, that he could secure a lawyer if he wanted to, and that at the time Movant gave the incriminating statement, Movant specifically stated to Tomlinson that no threats or promises or any rewards of any kind had been offered Movant to make a statement. Further, on the morning of May 8, 1949, without any prior advice from Smallen, Tomlinson received a telephone call from Sheriff Smallen that Movant wished to make a statement."

The trial court's findings are amply supported by the evidence. Sheriff Smallen testified that a few days before May 8 Mahurin told him that he wanted to make a statement about the death of his wife. Sheriff Smallen arranged to have a brother of Mahurin present when the statement was made. The brother brought a minister with him. The statement was made in the sheriff's living quarters at the jail. The sheriff's wife recorded the statement in shorthand and subsequently transcribed it and destroyed her shorthand notes. The prosecuting attorney was present when the statement was made and advised Mahurin that he was not required to make a statement and that he could wait until he obtained a lawyer if he wished. He also advised Mahurin that the statement could be used against him on his trial. Smallen, his wife and the prosecutor testified that no threats were made against Mahurin. None of them observed any evidence of physical violence on Mahurin.

Appellant's argument on this point is based largely upon the duration of his confinement prior to the making of the statement (March 24 to May 8) and Mahurin's testimony about his mistreatment during that time. The trial court found Mahurin's testimony incredible. The details of his testimony need not be repeated. There is no basis for this Court's concluding that the rejection of Mahurin's testimony was clearly erroneous.

Appellant argues that the record of Mahurin's hospitalization in the Bonne Terre Hospital corroborates Mahurin's testimony that he was mistreated while in jail. He was admitted to the hospital on April 21, 1949. The admission note recited that Dr. G. L. Watkins, Sr., had seen Mahurin in the jail several days before the hospital admission and that he was complaining at that time of having been kicked in the lower abdomen. Dr. G. L. Watkins, Jr., who examined appellant upon his admission and attended him during his hospital stay, found that appellant had a contusion of the rectus abdominal muscle. Doctor Watkins stated that the injury was of the type which would not normally be self-inflicted and which would require some external force. Doctor Watkins observed no other injury to Mahurin when he examined him upon his admission to the hospital.

This hospital record and Doctor Watkins's testimony did not cause the trial court to disbelieve the testimony that Mahurin had not been mistreated by the officers while in custody. Neither the hospital record nor the doctor's testimony ascribed the alleged kick to a police officer. This particular piece of evidence does not call for the rejection of testimony of the police officers about Mahurin's treatment while in custody. It does not require the conclusion that the trial court's finding of no mistreatment was clearly erroneous.

■ Appellant has filed an extensive brief, citing numerous cases from the federal and other courts on the voluntariness of statements of a defendant. There can be no quarrel with appellant's position that the essential question in a case such as this is whether or not, in view of the totality of the circumstances, the defendant's will was overborne at the time of his statement. That test, expressed by this Court in State v. Glenn, Mo.Sup., 429 S.W.2d 225, 232–233[8, 9], was applied by the trial court. It is the test laid down in cases such as Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922; Leyra v. Denno, 347 U.S. 556, 74 S. Ct. 716, 98 L.Ed. 948, cited by appellant. Applying such test to the facts found by it, the trial court found no basis for appellant's contention that his statement was not voluntary. In view of the facts found by the trial court, its conclusion on this issue is certainly not clearly erroneous.

### III.

#### Denial of Counsel

■ Appellant's third point is summarized in the language of his brief as follows:

"The court erred in ruling that movant was neither denied counsel nor effective assistance of counsel because movant had no counsel from the time that he was arrested at the inquest until after he was arraigned some 54 days later during which time a confession was extracted, and movant was not allowed to properly consult with counsel for the preparation of his litigation nor properly participate with counsel during trial."

The difficulty with this position is that the trial court, on the evidence before it, found that there had been no such denial of appellant's rights. The trial court found that an attorney had appeared in the magistrate court on behalf of appellant on his perjury charge arraignment. It found that that attorney visited defendant one or more times in the St. Francois County jail. It found that there had been no denial of right to consult with counsel between

March 17 and May 9, 1949. It found a voluntary waiver of right to counsel when the May 8th statement was made. It found that the trial court offered to appoint counsel on movant's first two appearances in the circuit court and that the offer was declined. It 'found a voluntary waiver of right to counsel upon arraignment and the entry of a plea of not guilty. It found that on June 20 movant reported the employment of Mr. Morris and the various actions thereafter taken by Morris and his associate, Mr. Gray, in preparing for the trial.

Appellant's brief simply does not challenge these findings nor point out any basis for the conclusion that they are erroneous. The findings of the trial court are clearly in accord with the evidence presented at the hearing, are supported thereby, and are not clearly erroneous.

### IV.

### Suppression of Evidence

The basis for this contention is Mahurin's testimony, in effect, that he made no incriminating statement on May 8. He admitted being in the sheriff's residence, but said that he told the same story that he told at the inquest. He testified that witnesses at the trial testified that he made a different statement. On the basis of this testimony, appellant now charges that the state knew that the testimony of the witnesses to appellant's statement was false. The charge also is that the destruction of the shorthand notes of his statement amounted to a suppression of evidence favorable to him.

Obviously, this contention relies wholly upon the credibility of Mahurin's testimony. The trial court's finding on Mahurin's lack of credibility and its further finding

that the witnesses did testify truthfully to appellant's statement and that Mrs. Smallen truthfully transcribed movant's statement dispose of this issue.

Judgment affirmed.

### PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court En Banc.

Affirmed.

All concur except SEILER, J., who dissents in separate dissenting opinion filed.

### SEILER, Judge (dissenting).

I respectfully dissent. An examination of the record of this case compels me to believe that the trial court's conclusions of law based upon its findings of fact are clearly erroneous and should be reversed.

The trial court found Mahurin's testimony to be totally unreliable and cited as examples Mahurin's account of a trip to Illinois where he claimed he was shot in the back and his account of the refusal of the trial court at his trial to permit him to sit inside the bar of the court, at the counsel table with his lawyers. I have no quarrel with the rejection of Mahurin's testimony with respect to these alleged incidents. However, the trial court and this court have ignored the one determinative issue herein presented.

The trial court found that Mahurin had not been beaten. There is no evidence to support this finding. Mahurin's jailers each categorically denied beating him or ever witnessing his being beaten. Neither these denials nor the rejection of Mahurin's testimony explain the hospital record[1] which shows: (1) that Mahurin had blood in his urine prior to his admission to the

---

1. The hospital record is set out in an appendix to this opinion. It was put into evidence by stipulation. There is no challenge of the trustworthiness of the hospital record or any doubt that it was made in the usual course of hospital business. In fact, in its findings of fact the trial court relied on the hospital report and the physical examination to disprove Mahurin's claim that he had been shot.

hospital and (2) that he had suffered a contusion of the rectus abdominus muscle, injuries which caused Mahurin's hospitalization.[2]

The following undisputed and unexplained facts vitiate the constitutional admissibility of the confession:

1. Mahurin's injuries and resulting hospitalization, during the time he was in the close custody of the sheriff and his deputies in the small St. Francois County jail. The sheriff admitted he was responsible for the jail and as he put it, " * * * nothing went on that I didn't approve it, I can assure you of that." Mahurin, during the time he was a prisoner, unquestionably was the victim of violence. The kind of injuries he had were not self-inflicted. A man cannot kick himself in the stomach.

2. The alacrity with which he was taken to circuit court once he confessed, contrasted with his long incarceration prior thereto—54 days altogether from arrest to first appearance in circuit court, with the confession being made on the 53rd day, followed by a plea of not guilty and a trial lasting eight days.

3. The continuing conversations between Mahurin and Sheriff Smallen, many of them at night, together with the exhortations of the sheriff for Mahurin "to make a clean breast of it and confess", after he had been indicted and despite the fact the sheriff was aware that Mahurin had been consulting with a lawyer, contra to the standards established in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 and State v. Witt (Mo. Sup.), 422 S.W.2d 304. The sheriff's objective was to convict Mahurin out of his own mouth, counsel or not, and if the primary aim of the law is to secure a conviction, then he was justified. But fortunately for all of us, the rights of an accused cannot be sacrificed to obtain a conviction.

To be admissible into evidence a confession must be voluntary. Voluntariness is not a fact question, but a conclusion of law, Hector v. State, 2 Mo. 166. Our old cases examined voluntariness upon the theory that involuntary confessions were too untrustworthy to be admitted into evidence. It therefore followed that a confession would be admissible even though there had been a prior confession which was involuntary if the state could prove the influence which produced the first confession did not affect the second, State v. Brown, 73 Mo. 631; State v. Ellis, 294 Mo. 269, 242 S.W. 952; State v. Williamson, 343 Mo. 732, 123 S.W.2d 42. Under these cases Mahurin's confession would be voluntary. His injuries which gave rise to his hospitalization occurred near mid-April (he was hospitalized from April 21 to April 23); there is no evidence of physical abuse after his hospitalization. His confession was made approximately two weeks later on May 8th. Today the concept of voluntariness is a much broader concept. The theory underpinning the older concept has been abandoned, 3 Wigmore, Evidence, Sec. 826 (Chadbourn Rev. 1970) at p. 350. The modern conception of voluntariness is a more complex *legal* notion inculcating several factors—some focus on the mental-physiological state, some on the faithful observation of the defendant's rights, and some upon the conduct of those to whom the confession is made. In cases prior to Miranda the third factor becomes the most important, Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242; Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; 3 Wigmore, Evidence, supra, at p. 351; ALI Model Code of Pre-Arraignment Procedure, T.D. No. 1, p. 167. This is based upon the conviction that ours is an accusatorial, not an inquisitorial, sys-

---

2. The rectus abdominus muscle is the muscle supporting the abdominal viscera. It lies in front of the bladder. Blakiston's New Gould Medical Dictionary, 2d Ed. Trauma to the urinary tract is one of the causes of blood in the urine, Traumatic Medicine and Surgery for the Attorney, Vol. 5, p. 513.

tem of justice, Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760, proceeding on the assumption that those in whose hands the administration of justice is placed are bound by the law, Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037. Viewed in this light, proof of illegal, physical violence against the defendant would make any confession constitutionally involuntary while in the custody of those responsible for the violence, regardless of the temporal relation of the violence and confession. Thus Mahurin's testimony as a factor in determining the voluntariness of his confession is less significant than other evidence which is inconsistent with a voluntary confession, Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634.

It should be added that this is not a case where the defendant has waited 20 years or more to attack his conviction, until witnesses are dead and memories dim. Mahurin's first application for a writ was lodged here in June, 1950, about eight months after his conviction. He has thirty files in this court over the years, raising basically the same issue as raised in the present motion and setting forth basically the same facts, albeit his later petitions and motions evidence what to a layman seems like paranoia and contain some wild allegations. Not until the present did Mahurin ever succeed in getting an evidentiary hearing on these allegations he has been raising for 20 years, although in 1951, this court did examine the record proper in a writ of error, State v. Mahurin, Mo., 240 S.W.2d 110.

For the reasons set forth above, I would reverse the order of the trial court overruling Mahurin's 27.26 motion and would set aside the judgment of conviction and order a new trial, based upon the conclusion that the confession admitted into evidence at Mahurin's 1949 trial was not voluntary.

APPENDIX

BONNE TERRE HOSPITAL ASSOCIATION

*Hospital No.* 26575  *Room No.* 208  *History Taken By* G. L. Watkins, MD

*Name* Mr. Wm. C. Mahurin M S W *Referring Physician*

*Address* Farmington, Mo. R.R. 2  *Age* 53  *Sex* Male

*Occupation* Farming  *Admitted* 4–21–49, 12:30 pm *Discharged* 4–23–49

*Diagnosis* 27325–402 Contusion of the rectus abdominus muscle

*Admission Note:*

This is a 53 year old male, a patient of Dr. G. L. Watkins, Sr., who has been incarcerated in the County jail. He was first seen by Dr. Watkins, Sr. several days ago, at which time it was stated he was kicked in the lower abdomen and had been passing bloody urine since, and having a good deal of pain in this region. A urine specimen was brought to the office, and it contained a considerable amount of blood. The patient has been continually complaining of pain, and he is admitted to the hospital for study and observation.

*Past History:*

Patient states that several years ago at the Deaconess Hospital because of a back pain, he had some oil injected into his spine for study to rule out the possibility of a disc. He states that he was not operated.

*Physical Examination:*

Reveals a well developed, well nourished, 53 year old male, who seems to be in a considerable amount of distress. He is holding his abdomen and twisting his head from side to side, complaining of abdominal pain and right flank pain.

Eye, ear, nose and throat: Essentially negative.

Mouth: There is fair oral sepsis, gums are in fair condition, tongue protrudes in the midline without tremor.

Neck: Trachea is in midline; thyroid is not palpable; there is no cervical adenopathy.

Chest: Symmetrical; expansion is equal; lungs are clear to percussion and auscultation.

Heart: Sounds are of good quality; there are no murmurs; rhythm is regular; the heart does not seem enlarged to percussion. The pulse is full and pounding at 84 per minute.

Abdomen: There is some muscle guard in the lower abdomen, which at times is felt can be broken through. There are no definite masses. He complains of tenderness all over the lower abdomen and some in the right flank region. There are no external bruises in this area.

External genitalia: Normal male.

Rectal examination: Negative.

Extremities: Symmetrical.

Reflexes: Physiological.

*Impression:*

Possible kidney or bladder injury.
                    G. L. Watkins, MD

*Summary:*

27325–402 B Contusion of rectus abdominus muscle.

*Treatment:*

Patient was catheterized on admission and the urine was clear both grossly and microscopically, though somewhat concentrated. A.K.U.B. film showed no evidence of free air in the abdomen, though there was some lower distension. A catheter was inserted into his bladder per urethra and a cystogram was taken, which was negative for any evidence of perforation of the bladder. In the absence of any positive findings, it was assumed that whatever bladder injury he may have sustained from this blow at the present time, at least, has healed, and the patient was discharged.